122 So.2d 507 (1960)
K.R. BASHAW, Doing Business As K.R. Bashaw, Builder and Developer, Appellant,
v.
Henry Elmer DYKE, Jr., and Martha Howard Dyke, His Wife, Appellees.
No. B-364.
District Court of Appeal of Florida. First District.
August 2, 1960.
Rehearing Denied September 12, 1960.
*508 Marks, Gray, Yates, Conroy & Gibbs, Jacksonville, for appellants.
Joel L. Goldman, Jacksonville, for appellees.
STURGIS, Judge.
K.R. Bashaw, d/b/a K.R. Bashaw, Builder and Developer, defendant below, seeks reversal of a final judgment entered in a negligence action pursuant to verdict of the jury in favor of plaintiffs, Henry Elmer Dyke, Jr., and Martha Howard Dyke, his wife.
The complaint is in two counts, one of which is to recover damages for personal injuries and loss of earning capacity allegedly suffered by Mrs. Dyke as a proximate result of defendant's negligence. The other is to recover damages allegedly suffered by Mr. Dyke, consisting of money laid out for medical treatment of Mrs. Dyke and loss of consortium with her as a result of her injuries. Defendant's answer denied the negligence charged, and affirmatively charged Mrs. Dyke with negligence proximately contributing to the injury complained of.
The points for determination are whether the trial court erred (1) in denying defendant's motion for directed verdict, (2) in charging the jury on the so-called distraction rule which, as applied herein, operated to relieve Mrs. Dyke from the effect of any contributory negligence that might have been established by the evidence, and (3) in its charge to the jury regarding the standard to be applied in determining whether Mrs. Dyke was guilty of contributory negligence.
The material facts are not in dispute. Plaintiffs engaged defendant to add to their home a Florida room, bedroom and bath. Plaintiffs, their three small children, and the mother of Mrs. Dyke continued to reside in the home during the performance of the work.
As the home originally stood, a den adjoined a livingroom and passage between them was through an archway six feet wide and eight feet high. The floor of the den was constructed of tile and was approximately three inches below the floor level of the livingroom. The new construction adjoined the den, and the design was such that upon completion of the addition a person normally traveling from the livingroom to the new addition would pass through the archway into the den and thence through a door into the new Florida room. In conjunction with defendant's work under progress, and also in preparation for work to be performed in the den by one other than defendant, plaintiffs had caused all furniture and furnishings to be removed therefrom. On the day of the accident work on the additions under construction by defendant had progressed to the finishing stages.
Approximately one week prior to the accident the parties blocked the archway between the livingroom and the den so that the small children of the family would be unable to enter through the den into the area of new construction and become subjected to possible injury. To accomplish this a heavy desk-bookcase combination and a business type of filing cabinet were placed on the livingroom side of the archway. *509 These articles were about four feet high, extended across the entire width of the arch, and were sufficiently heavy to prevent the children from moving them. The defendant was aware that thereafter adult members of the household had occasionally entered the area under construction by sliding one end of the desk away from the archway and passing through the den into the new Florida room.
With the above purpose in mind, Mrs. Dyke slid one end of the heavy desk-bookcase combination back from the archway and discovered that the passageway leading from the livingroom into the den had been further obstructed by two bundles (four sheets) of sheetrock, also known as beaverboard. Each sheet was 4' wide, 8' long and 3/8" thick. The combined weight was approximately 180 pounds. This material had been placed there by defendant's workmen on the day of or the day prior to the accident, but such was not made known to Mrs. Dyke until the occasion mentioned. The bundles were placed on edge lengthwise with the bottom edge located about three inches from the den wall and the top edge sloped to and resting against each side of the archway, thus further blocking the entire passageway between the livingroom and the den.
Rain had fallen intermittently throughout the day of the accident, increasing in the late afternoon to the point where the painters were obliged to quit their work, and the other workmen left the premises earlier than usual. In the evening a torrential rain commenced to fall and the wind began to blow. After this condition had continued for a period of from fifteen to thirty minutes, Mrs. Dyke then became aware that rain was blowing into her home through open casement windows serving some portions of the old part of the home and she proceeded to close them. Having done this, she then realized that the rain was also blowing into the den  an old part of the home  through awning type aluminum windows that served the den, and determined to close these also.
Mrs. Dyke, being unfamiliar with this type of building material and knowing nothing of its weight, grasped the two bundles by the top edge with both hands and attempted to slide them horizontally to the archway so as to provide her with free passage into the den. In so doing she became aware of their heavy weight and her inability to slide them horizontally, whereupon she pushed them forward and away from herself, intending to stand them vertically on edge and pass around one end through the space between their side edge and the wall. As she did this the momentum generated and the weight of the sheetrock caused it to continue its forward motion, but she clung to it momentarily for fear that if released from her grasp it would fall with such force as to break. In so doing the weight of the sheetrock pulled her off balance, her feet started to slip on the tile floor causing her legs to be spread widely apart as she fell forward, and she ultimately released her grasp but not in time to regain her balance. In some manner her fall was such that upon coming to rest her feet were found to be located beneath the fallen sheetrock. These circumstances resulted in substantial bodily injuries.
A careful examination of the transcript of testimony fails to reveal any competent evidence of negligence on the part of the defendant proximately causing or contributing to the injury suffered by Mrs. Dyke, therefore defendant's motion for directed verdict should have been granted. City of Tampa v. Norris, Fla. App. 1958, 101 So.2d 30.
Assuming, however, that some degree of negligence on the part of defendant had been established, the evidence is conclusive that negligence on the part of Mrs. Dyke proximately contributed to her injury, so that on that basis also the motion for directed verdict should have been granted. Andrews v. Goetz, Fla.App. 1958, 104 So.2d 653. The only hint of negligence attributable to defendant is that his workmen *510 placed the sheetrock in the den against the archway wall, thereby providing an additional barricade to passage between the livingroom and the den, and did not notify Mrs. Dyke that it was put there or its weight. By her own admission, however, she saw the sheetrock the moment she moved the bookcase, and the following testimony in chief pinpoints the cause of the accident:
"Q. Can you tell me what caused you as you say to do the complete split, what was the  A. The weight of the material.
"Q. As you held it in your hands? A. Yes, sir, and the floor there is slippery.
"Q. What kind of floor is in the den, dining room? A. At that time, asphalt tile."
It will be recalled that this floor is part of the original house. Whatever caused it to be slippery is not traceable to the defendant. Thus the determinative ultimate fact is that Mrs. Dyke's own purposeful conduct was an efficient intervening cause that led to her injury. Fields v. Quillian, Fla., 74 So.2d 230.
There is no evidence that sheetrock per se is inherently dangerous. Whatever danger existed by reason of its weight was quite obvious to and actually encountered by Mrs. Dyke in time to avoid the consequences of her purposeful acts. Even had she not seen the sheetrock or discovered its weight, our courts consistently adhere to the proposition that one sees that which is there to be seen by the ordinary use of one's senses, and if it is there to be seen, it is deemed in law, to have been seen.[1] There is no duty to warn one of visible and obvious hazards. Bowles v. Elkes Pontiac Co., Fla. 1952, 63 So.2d 769; Matson v. Tip Top Grocery Co., 151 Fla. 247, 9 So.2d 366.
On the second point for determination, consideration of the entire record leads us to conclude that the learned trial judge was persuaded to permit this cause to go to the jury on the erroneous theory that the facts warranted application of the so-called distraction rule, as to which he charged the jury as follows:
"If you believe that Mrs. Dyke should have appreciated the danger or should have had knowledge of the condition which created the peril, you may still find the plaintiff, Martha Howard Dyke, free from contributory negligence if you believe that her attention was diverted or distracted away from the sheetrock which you believe she should have known to be dangerous, by a cause sufficient to distract or divert an ordinarily prudent woman under the same circumstances and, therefore, because of such distraction or diversion, she did not know of the possible danger, and, in addition, if you find the defendant guilty of negligence, then your verdict must be for the plaintiffs.
"If you believe that the plaintiff, Martha Howard Dyke, under ordinary circumstances, appreciated the danger or had knowledge of the condition which created the peril, and therefore, would be guilty of contributory negligence, you may excuse her actions and find for her if you believe that her attention was diverted or distracted away from the danger by a cause sufficient to divert or distract the attention of an ordinarily prudent woman under the same circumstances."
Instructions must be predicated upon facts in evidence, and a charge on an issue as to which no evidence has been submitted will constitute error. Bessett v. Hackett, Fla. 1953, 66 So.2d 694.
*511 The facts in evidence are insufficient to justify this charge and its effect was to permit the jury, without basis, to relieve Mrs. Dyke of the contributory negligence, assuming negligence on defendant's part, of which the jury might have otherwise found her guilty. It is appellees' contention that the jury could have reasonably concluded that Mrs. Dyke was distracted by the rain blowing into her home through the open windows of the den, and by a sense of urgency to close the windows against the elements, but such facts alone would not constitute a distraction within the meaning of the so-called distraction rule which is a recent innovation of the law of negligence in Florida and its position in the firmament of jurisprudence quite unsettled. Like the doctrine of sudden emergency and last clear chance, the effect of the rule is to absolve one whose right to relief might otherwise be barred because of contributory negligence, and since it creates an exception to the general rules governing negligence, its application must be strictly limited to those cases in which its pertinence is clearly established by the evidence. In view of Mrs. Dyke's testimony that she not only saw the obstruction created by the sheetrock, but deliberately attempted, notwithstanding its weight, to maneuver it in such way as to gain access to the den, and of testimony, hers included, that the condition of blowing rain had existed for anywhere from ten to thirty minutes prior to the accident, this case does not permit its application.
Deane v. Johnston, Fla. 1958, 104 So.2d 3, 65 A.L.R.2d 957, is apparently the only Florida case in which the distraction rule has been applied to relieve the plaintiff from the effect of contributory negligence. In that case the plaintiff tripped over a set of weighing scales that, although negligently placed on a public sidewalk, had to plaintiff's knowledge been maintained in that location for a long period of time. In attempting to reach home before the onslaught of a hurricane, plaintiff stopped at a position near the scales where she customarily boarded a bus for home, and while waiting there her employer drove up, stopped his car in response to a traffic light, and called out to her. Observing that he was traveling in the direction of her home, plaintiff looked toward the traffic light as she started to the car, and with her attention thus diverted, tripped over the scales and in falling suffered injuries. In affirming judgment for plaintiff the Supreme Court observed that it was her duty, in the exercise of ordinary care and caution for her own safety, to take note of the traffic light before attempting to cross the street, and that it was for the jury to determine whether under all the circumstances her attention was for sufficient cause diverted from the known danger caused by the location of the weighing scales in her path of progress, thus leaving the issue of contributory negligence to be resolved by the jury. It is seen that the plaintiff there was not handling the scales, while in the case on appeal Mrs. Dyke was undertaking to handle the sheetrock.
Diversion of attention as contemplated by the rule is to be distinguished from a mere lack of attention by reason of voluntary interest in some collateral matter. The fact that one momentarily forgets the existence of a hazard or fails to pay any attention to what he is doing, with nothing to distract his attention from it, is no excuse for his failure to observe the hazard and the diversion rule is not applicable under such circumstances. 25 Am.Jur. 760, § 468.
The judgment is reversed and the cause remanded with directions to enter final judgment for the defendant-appellant.
SEBRING, HAROLD L., Associate Judge, concurs.
WIGGINTON, C.J., concurs in part and dissents in part.
WIGGINTON, Chief Judge (concurring in part and dissenting in part).
*512 I am in complete agreement with the holding expressed in the majority opinion that the trial judge committed error in charging the jury on the doctrine of distraction. It is only for this reason that the judgment should be reversed and the cause remanded for a new trial.
I am unable to agree that the undisputed evidence before the jury in this case shows that the plaintiff is guilty of contributory negligence as a matter of law to such an extent as to bar her from the relief sought.
A careful review of the record reveals that the bundles of sheetrock were placed by defendant's agents in such position as to obstruct the passageway from the living room of plaintiff's home into the den which led to the new addition. It is important to note that the den was no part of the new construction where defendant was privileged to store his building material. Defendant knew that plaintiff and other adult members of the family customarily used this passageway, but failed to advise plaintiff that the bundles of sheetrock were heavy and could be moved only with difficulty and by the exercise of more than ordinary care.
Two bundles of sheetrock duplicating those which caused plaintiff's injuries were received in evidence during the trial. The jury had full opportunity of observing that the structural composition of this type material is such that a sudden forward pressure applied to the center of an eight-foot strip standing on edge will cause the two ends to whip forward thereby creating additional forward momentum which tends to throw the upper edge forward and downward unless the momentum is halted by the exertion of an equal counteracting force. Such propensities of sheetrock were known or should have been known to defendant, but from the evidence were clearly unknown to and not appreciated by plaintiff. It is my view that the jury could have lawfully concluded that defendant was negligent in so obstructing a known passageway in the living area of plaintiffs' home with the particular type of material in question without having properly warned plaintiff of the result which might follow if she singlehandedly attempted to move it.
The evidence reveals that plaintiff was pre-occupied and justifiably concerned with the necessity of gaining entrance into the den for the purpose of closing the windows against the blowing wind and rain. Her only practicable means of attaining this objective was to enter the den through the passageway customarily used by her. The jury could lawfully have concluded that she acted as a reasonably prudent person would under the circumstances in her attempt to remove the obstruction caused by the bundles of sheetrock blocking the archway. After becoming aware of the weight of the bundles and realizing the difficulty which she was encountering in her attempt to push them forward into a vertical position in order to allow her to pass around them, whether her act in retaining a grasp on the bundles as they fell forward and away from her was a result of uncontrollable instinct or amounted to contributory negligence on her part was likewise an issue to be resolved by the jury.
It is my view that the issue of defendant's negligence and the issue of plaintiff's contributory negligence were properly submitted to the jury under appropriate instructions by the court. I am accordingly of the opinion that the judgment should be reversed and the cause remanded for a new trial.
NOTES
[1] Commercial Credit Corp. v. Varn, Fla.App. 1959, 108 So.2d 638. City of Miami v. Eichardt, Fla.App. 1959, 115 So.2d 453. Jacobs v. Claughton, Fla.App. 1957, 97 So.2d 53. Pettigrew v. Nite-Cap, Inc., Fla. 1953, 63 So.2d 492. Earley v. Morrison Cafeteria Co. of Orlando, Fla. 1952, 61 So.2d 477.