GENERAL DYNAMICS CORPORATION, Appellant,

v.

Belle Martha ADAMS, a Widow, Appellee.

PAN AMERICAN WORLD AIRWAYS, Appellant,

v.

GENERAL DYNAMICS CORPORATION, Appellee.

No. 20673.

United States Court of Appeals Fifth Circuit.

Jan. 12, 1965.

C. C. Howell, Jr., Jacksonville, Fla., Howell & Houser, Jacksonville, of counsel, for appellant General Dynamics Corporation.

Heskin A. Whittaker, Orlando, Fla., of Whittaker & Pyle, Orlando, Fla., and Marks, Gray, Yates, Conroy & Gibbs, Jacksonville, Fla., for appellant Pan American World Airways.

Alan R. Schwartz, Robert Orseck, Miami, Fla., Nichols, Gaither, Beckham, Colson & Spence, Miami, Fla., of counsel, for appellee.

Before TUTTLE, Chief Judge, and JONES and GEWIN, Circuit Judges.

TUTTLE, Chief Judge:

These appeals result from a jury verdict and judgment in favor of Mrs. Adams and against General Dynamics Corporation for damages resulting from the death of her husband, and from a judgment on behalf of General Dynamics Corporation against Pan American World Airways as a result of a third party complaint.

General Dynamics appeals from the widow's judgment against it and Pan American appeals from the second judgment by which General Dynamics obtained a judgment for indemnity for its liability to the original plaintiff.

The misadventure which brought about the suit in the first place occurred at the United States Government missile base at Cape Kennedy, Florida. General Dynamics had built the installation known as Complex 11, comprising a service tower with its elevators, and the pad from which the missile was to take its flight. The Government had then, by contract, also provided for the construction of the missile, the preparation for its firing, and its actual launching by General Dynamics. Under a separate contract with the United States Government, Pan American World Airways had undertaken to manage, operate, maintain and service Complex 11, including the elevators, one of which was the source of the difficulty giving rise to this litigation.

Frederick D. Adams, the decedent, was a heavy equipment mechanic employed by Pan American. He was working jointly with one Tripp, and together they had just finished repairing another elevator than the one here involved. They had been directed by their foreman to do some repair work on the west elevator. In order to do so they had to get on top of the elevator itself. They notified the two other employees of Pan American, electricians, of their intention and asked the electricians to deactivate the elevator by pulling a switch on the eleventh floor. This was never done. All four of the men rode the elevator to the ground floor, whereupon Tripp and Adams climbed to

the top of the elevator and started working on it. They left the front door of the elevator open; the electricians took the outside button switch off and removed it to work on it at a distance of some 300 or 400 feet. One of them turned the safety switch, inside the elevator, "in the off position." There was a sign on the elevator that said, "Check with stand caller before entering elevator . . . [or] before using elevator." To the right of the elevator door was a sign: "Please check with the stand caller before entering the service tower or launching area." The stand caller or "stand talker" was a General Dynamics employee whose function it was to make announcements over a loud speaker system which were intended to be heard at various points on the Complex by means of outlets provided for that purpose. One of the four men walked over to the stand talker, "and told him to announce the east elevator was back in operation but the west elevator would be out of operation until further notice." There is some evidence that the stand talker immediately made that announcement.

After Adams had been working some 15 minutes on top of the elevator and had finished his work, he began to leave by crawling down on the outside of the car, the same way he had come up. At this point one David Wright, an engineer for General Dynamics, who was primarily responsible for the radio and communication guidance system with respect to the missile that was to be launched within the next two days, came out of his office some distance away and entered the elevator for the purpose of going up to the sixth floor. He noticed that the call button was not there and found the door open. He pushed the control button for the sixth floor; when the elevator did not respond, he looked down the row of buttons and saw that the power switch was turned off. He turned it to "on" position and the elevator began to rise. He did not see the men on top of the elevator; he had not heard the sound talker make his announcement; he did not see the signs cautioning him to check

in with the sound talker before entering the tower; as the elevator rose he heard some noise and screaming above, but did not connect it with the roof of the elevator, and he continued to the sixth floor. Adams was knocked off and fell and was killed. His companion stayed on top of the elevator and rode safely to the sixth floor.

There was testimony that it was not unusual for workmen to leave the elevator and turn the switch to the "off" position and leave the door open for a short period of time. There was also testimony that this practice was frowned upon and that it was not a general procedure. There is also evidence to the effect that it was customary if a man was working on the top of an elevator to have a companion stay below in the car itself to prevent anyone else from using it.

The specifications for the construction of the elevator called for two improvements that had not been installed. One was a door or passengerway through the roof of the car, which would permit men working on the top to come down through the roof rather than to climb down over the side, which Adams was doing when he was knocked off the car and killed. The other was a switch on the top of the car which would permit a man working there to prevent operation or to cause the car to operate at will. These appliances were required under the Florida statutory elevator safety code.

Adams' personal representative could, of course, not sue Pan American World Airways because, as its employee, his personal representative would be restricted to benefits provided under the Florida Workmens Compensation laws. She did, however, sue General Dynamics, basing her action on two theories of negligence: (1) That General Dynamics' employee Wright negligently operated the elevator when he should have known that Adams was working on the roof, and (2) that General Dynamics had negligently and improperly constructed and continued to use the elevator without including two legally required safety devices, to-wit, the escape hatch at the top of the car

and the control that would have permitted the workmen to prevent the movement of the elevator as they worked.

From a jury verdict of $130,000 against it, General Dynamics is here appealing. From a judgment against it on a third party complaint which made it liable for the entire amount of the judgment, Pan American World Airways appeals.

We consider first the appeal from the verdict and judgment against General Dynamics Corporation and in favor of the widow and personal representative of the deceased employee Adams. This case is remarkably free of actual dispute as to the underlying facts which brought about the death of the plaintiff. So, too, is there little dispute as to the applicable law. This being a diversity case, we, of course, apply the Florida law of negligence, causation and tort liability.

Appellant, with great vigor and analytical reasoning draws on the many Florida cases dealing with the problem presented to the courts when a defendant, guilty of initial negligence, seeks to escape liability because of the "intervention of an independent efficient cause." This argument is directed towards criticism of the trial court's action in submitting to the jury the question whether the failure of General Dynamics to construct and thus provide for the operation an elevator including the statutorily required safety features was a negligent proximate cause of the injury. Appellant saved this legal point by appropriate requests to charge and by objections to the admission of evidence in the nature of the statutory requirements touching on the furnishing of elevators.

We need go no further than accept on this latter point the authority as laid down in the case which the appellant calls, "a sort of classic case in Florida on this point." We refer to Cone v. Inter-County Tel. & Tel. Co., Fla., 40 So.2d 148. The language quoted from that case by appellant, and repeatedly referred to by it as controlling the case before us, is:

"Not every negligent act of omission or commission gives rise to a cause of action for injuries sustained by another. It is only when injury to a person who himself is without contributing fault has resulted directly and in ordinary natural sequence from a negligent act without the intervention of any independent efficient cause, or is such as ordinarily and naturally should have been regarded as a *probable, not a mere possible*, result of the negligent act, that such injured person is entitled to recover damages as compensation for his loss. *Conversely, when the loss * * * is merely a possible, as distinguished from a natural and probable, result of the negligence,* recovery will not be allowed."

From the light of this language we must determine whether on the facts presented in evidence at the trial, a jury could find that the death of Adams, while working on the top of the elevator, was a "foreseeable" result from the negligent acts of not installing the safety exit by the means of which Adams could have reentered the car without placing himself in a hazardous position, and of failing to install the switch which would have been at Adams' hand to deactivate the car as long as he was working on it. As we understand the Florida rule, for this to be foreseeable, the jury must be permitted to find that the injuries to Adams were a "probable, not a mere possible" result of the failure by General Dynamics properly to construct the elevator.

We have no doubt that a jury question was posed by the evidence presented by appellee. If the adoption of the statute dealing with safety in elevator construction, which by reference to standards universally understood required the installation of these particular safety devices, was not of itself adequate proof of the foreseeability of injury similar to the actual occurrence which resulted in Adams' death, the statute coupled with the other facts proved at the trial, surely were. Testimony showing the inade-

quacies inherent in the operation when these safety regulations had not been complied with, and showing the casual attitude of all persons involved towards the inadequate safety measures that were in effect, would permit the jury to infer that an accident like that occurring to Adams is exactly the eventuality that the legislature had in mind when it required the installation of these two devices. Thus, we conclude that the trial court did not err in submitting this issue to the jury.

Similarly, we have no doubt about the submission of Wright's negligent conduct to the jury, without a precautionary charge on a doctrine of "distraction" on which appellant relies to exculpate Wright from any responsibility in connection with the unfortunate occurrences. It was the contention of the appellant that Mr. Wright was deeply involved with responsible decisions to be made with respect to his duties in the prospective launching of a missile, and that this involvement was so overpowering as to bring into play what appellant calls the "distraction doctrine," claimed by it to be recognized in Florida decisions.[1]

In support of this proposition appellant relies upon Bashaw v. Dyke, Fla.App. 1, 1960, 122 So.2d 507, 510; Sinitz v. Shapiro, Fla.App. 3, 1958, 100 So.2d 458, 460; and Deane v. Johnston, Fla.1958, 104 So.2d 3, 9, 65 A.L.R.2d 957.

■ We think there are two reasons why appellant's contention can not prevail here. The first is that this charge was not needed to permit the appellant to argue that Mr. Wright's failure to do the things that the jury might find an ordinarily prudent person would do under similar circumstances [2] should be overlooked because of Mr. Wright's deep concentration. It could make this argument on the court's general charge that negligence is a relative matter and that the standard is that of a reasonable person under the circumstances. Thus, it was not necessary for the court to give the specific charge on the evidence dealing with Wright's conduct in light of the general charge on the subject.

1. This charge was requested by the appellant as follows:

"If you believe that Mr. David Wright, the Defendant General Dynamics' employee should have appreciated the danger to Mr. Frederick Adams, the Plaintiff's deceased husband, or should have had knowledge of the condition which created the peril, you may still find that Mr. Wright was free of any negligence if you believe that his attention was diverted or distracted away from the condition on top of the elevator by a cause sufficient to distract or divert an ordinarily prudent person under the same circumstances; and that it was due to such distracting cause that Mr. Wright did not know of the danger.

"If you believe that Mr. Wright under ordinary circumstances should have appreciated the danger or had knowledge of the condition which created the peril, and therefore, would normally be guilty of negligence, you may excuse his actions and find that he was not guilty of any negligence if you believe that his attention was diverted or distracted away from the danger by a cause sufficient to divert or distract the attention of an ordinarily prudent person under the same circumstances."

2. Wright failed to note or ignored a sign at the elevator saying, "Please check in with stand talker before entering service tower or launching area"; he did not check in with the stand talker prior to entering the elevator, although the stand talker had been given instructions that the elevator was out of service; he failed to see the men on the top of the elevator, although they were visible to a person who had looked up upon approach; he attached no significance to the wires dangling from the space from which the call button normally is placed; he entered the open elevator door, although normally the elevator door was closed when the car was in running condition; when he pushed the sixth floor button upon entering the elevator and the car failed to move, this did not call to his mind the possibility that the car might be out of service or in a dangerous condition; he then proceeded "without hesitancy" to turn the power switch into the "on" position; he failed to stop the elevator when he heard a commotion above him in the nature of screaming and bumping.

The second reason is that under the Florida authorities relied upon by appellant, it appears not to have been held that the state of a man's own concentration constitutes such "a distraction" from his ordinary duty to act as an ordinarily prudent person would act in order to come within what the Florida court, in Bashaw v. Dyke, supra, calls "a recent innovation of the law of negligence in Florida." The court there says: "The fact that one momentarily forgets the existence of a hazard or fails to pay any attention to what he is doing, with nothing to distract his attention from it, is no excuse for his failure to observe the hazard and the diversion rule is not applicable under such circumstances." 122 So.2d 507, 511. Neither the Sinitz nor the Deane case, supra, modifies the rule stated in Bashaw.

■ ■ While it is true that the trial court has the right, in federal trials, as pointed out by the appellant, to comment on specific issues and to discuss the evidence with respect to specific contentions of the parties, it is not required to do so. The charge may be, as it was here, a statement of legal principles, without a discussion of the specific contentions made by the appellant by way of defense. It was not error for the trial court to refuse to give the instruction requested by appellant on "diversion or distraction" or the instruction dealing with the duty to know of the peril.

■ Appellant's contention that the jury could not find Wright to have been negligent cannot be seriously considered. Inattention or lack of consciousness of his surroundings that still permitted Wright to seek out and turn a switch when the normal operating mechanism did not function, could not be so great as to prevent a jury from determining that it was also not sufficient to cause him to fail to pay attention to a printed notice directing him not to move the elevator without checking with the stand talker before entering the tower (elevator) or to ignore the other circumstances set out in fn. 2 above.

We find that there was no error in the submission of the case to the jury, or in its verdict or the judgment of the court against General Dynamics Corporation.

We turn now to the appeal of Pan American World Airways from the judgment against it resulting from the third party complaint. After the jury verdict in favor of Mrs. Adams in the main case, the trial court then submitted to the same jury the issues raised by the third party complaint.

This complaint is based upon third party practice provided for in Federal Rules of Civil Procedure. Rule 14(a) provides:

"At any time after commencement of the action a defendant, as a third-party plaintiff, may cause a summons and complaint to be served upon a person not a party to the action who is or may be liable to him for all or part of the plaintiff's claim against him."

The theory of the third party complaint asserted by General Dynamics is that Pan American had, by contract, obligated itself to General Dynamics to protect against the negligent acts that, it claims, resulted in the injury and death of Adams; that the injury and death of Adams occurred because of a breach of Pan American's duty of care to Adams; that this, therefore, constituted a breach of Pan American's contract with General Dynamics to the damage of the latter in the amount of the jury verdict obtained against it.

The theory of General Dynamics that Pan American was bound by contract to it not negligently to injure Adams is based on two alternative theories. The first is that Pan American had an express contract with the United States to exercise care in the management of the properties for the protection of its employees (including Adams) and that General Dynamics, by reason of its position as a separate contracting party with the United States, and having concurrent occupation of the premises, must be con-

sidered a third party beneficiary of the contract between Pan American and the United States. The second theory is that, subsequent to the execution of the two separate contracts between General Dynamics on the one hand and Pan American on the other with the United States, proper officials of the government had issued a "disposition slip" undertaking to outline the respective duties of the two contracting parties touching on the maintenance and safety precautions to be exercised with respect to the tower, including the elevator, in Complex 11; that this disposition slip was acquiesced in by the proper officials of Pan American and General Dynamics and thus, in effect, created a contractual relationship between the two.

It is not disputed that if this disposition slip became the contractual obligation of Pan American to General Dynamics then it did truly obligate Pan American to perform its duties, including the maintenance of the elevator and its use while under repair in a non-negligent manner. The trial court determined, as a matter of law, that this contractual relationship existed between the parties and charged the jury to that effect. Appellant, Pan American, complains of this ruling and contends that no such contractual relationship exists. For reasons that will be apparent in this opinion, we need not decide this question, but for the purpose of the opinion we assume the correctness of the trial court's disposition of the matter.

Pan American counters with the proposition that the Florida Workmen's Compensation law limits the liability of Pan American as an employer to its obligations to make the payments required in the statute itself. The contention is made that if Pan American can be required to compensate the third party tort feasor for an injury to one of Pan American's employees, this would violate the exclusive character of the Workmen's Compensation Act which provides in Section 440.11 that: "The liability of an employer * * * shall be exclusive and in place of all other liability of such employer to the employee, his legal representative, husband or wife, parents, dependents, next of kin, and anyone otherwise entitled to recover damages from such employer at law or in admiralty on account of such injury or death * * *."

Pan American also calls attention to Section 440.46(3) of the law which provides: "No other claim on account of such accidental injury may be maintained by any person against any employer who has accepted the terms of this chapter, except as herein provided." Appellant contends that this expressly bars a claim by General Dynamics, which fits within the terms, "by any person." in this subsection of the law. It is not clear that this section has the meaning claimed for it by Pan American, since, as pointed out by General Dynamics, this subparagraph (3) is included in a section of the Act entitled "Investigations by the commission; refusal to admit, penalty." This case being before the court as a diversity suit, it is appropriate for this court not to attempt to decide the questions of Florida law that are not essential to a determination of the case before us. Thus, as in the question of the existence of a contract, we do not decide the issue of exclusiveness of the Workmen's Compensation Act as a bar to the third party complaint. The disposition of the case by us does not require our deciding this question of law.

The posture of the case at the conclusion of the jury verdict and judgment in favor of Mrs. Adams is that the jury had found General Dynamics guilty of negligence as alleged in the original suit proximately causing the injury and death of Adams. The negligence as charged was (1) the failure of General Dynamics to comply with the Florida statute with respect to the installation of a safety door on the top of the elevator, and to install an emergency switch on the top of the elevator available to an employee while repairing the car, and (2) the actions of the engineer Wright in entering the elevator under the circumstances set out in the first part of this opinion, and turning on the switch, thus causing the car to

rise with the employees still working on the top of the car. General Dynamics did not move the court to require a special verdict on each issue of fact or answers to special interrogatories, which would have permitted it to ascertain which of the two theories of negligence the jury based its verdict on. Such a practice is authorized by Rule 49, F.R.Civ.P. It is, thus, impossible to ascertain whether the jury found the proximate cause of Adams death to have been the negligent construction of the elevator, or the affirmative acts of Wright.[3] Nevertheless, neither of these types of negligence can be said to have created a vicarious liability on the part of General Dynamics. The negligence was the negligence of General Dynamics directly and not liability attributed to it by operation of law on the doctrine of respondeat superior, or by reason of ownership of a dangerous instrumentality.

When General Dynamics then sought to obtain indemnity from Pan American, it did so not because Pan American committed the acts for which General Dynamics had been charged, but because Pan American had committed other acts (to some extent possibly of the same character) which would also make it negligent in discharging its duties to Adams. Thus, the effect of the third party complaint here is to say that while Mrs. Adams has recovered damages against General Dynamics for its breach of duty owed to her husband, another party, Pan American, also breached duties owed to Adams and the latter breach is the one that *really* occasioned Adams' death; it also breached a contractual duty owed to General Dynamics and the breach damaged General Dynamics to the extent of the recovery against it.

It will be noted that General Dynamics does not contend that there was a contract of indemnity in the usual sense, that is, a contractual undertaking by Pan American to pay off any judgments or make General Dynamics whole for any losses it suffered by reason of Pan American's failure to carry out its contract with the United States respecting the care it owed to its employees. There was no express agreement to indemnify General Dynamics against its own negligence.

Since the liability imposed upon General Dynamics by the jury verdict and judgment of the trial court was based on the conduct of General Dynamics and this basis for the judgment against it can not be attacked or challenged in any way in the third party suit, we are unable to see how the third party plaintiff here can establish that it has been damaged to the extent of the judgment against it by Pan American's breach of its contractual duty not to act negligently towards its employees. The jury has determined that it has been mulcted in damages because it was negligent. It is not permissible for another jury thereafter to determine that its damages were caused by a breach of contract. Any such breach by Pan American would therefore be *damnum absque injuria*.

We are here concerned with the Florida rule with respect to the right of indemnity for, while the right to proceed in a third party action is established by Federal rule, such right depends upon the existence of a state created liability. Thus, the Supreme Court decisions in Maritime cases, Ryan Stevedoring Co. v. Pan-Atlantic S. S. Corp., 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133; Weyerhaeuser S. S. Co. v. Nacirema Operating Co., 355 U.S. 563, 78 S.Ct. 438, 2 L.Ed. 2d 491, and Crumady v. Joachim Hendrik Fisser, 358 U.S. 423, 79 S.Ct. 445, 3 L.Ed. 2d 413; Waterman S. S. Corp. v. Dugan & McNamara, 364 U.S. 421, 81 S.Ct. 200, 5 L.Ed.2d 169, recognizing the right of a shipowner to recover against a stevedoring company when successfully sued by an employee of the stevedoring concern, are not in point here. Those cases deal principally with the non-delegable duty

---

3. We do not mean to decide whether, if the former, this would amount to passive or secondary negligence as contrasted to active or primary, sometimes dealt with in the Florida cases, discussed later.

of a shipowner to maintain a seaworthy vessel, the breach of which makes him liable without proof of negligence. In each of the cases the act of the stevedoring firm against which the Supreme Court permitted the third party action to proceed, constituted the element of unseaworthiness which fastened the vicarious liability on the shipowner. In this respect these cases are much like the class of cases which the Florida courts have recognized give rise to a cause of action by the owner of an automobile who is held liable to an injured party by reason of the negligent conduct of the person in possession and driving the car. In such cases it, of course, is the act of the third party defendant for which the third party plaintiff has been found liable to the original plaintiff.

■■■ Looking, then, to the Florida cases, we find that a third party complaint may be sustained under any of three sets of circumstances. The first of these, which is not in issue here, is the rare case in which one of two joint actors enters into a formal indemnity agreement agreeing to hold the other harmless in the event the other party is required to respond in damages for its actions even though such conduct be the result of the other party's own negligence. We discussed this type of liability in Jacksonville Terminal Company v. Railway Express Agency, Inc., 1962, 5 Cir., 296 F.2d 256. No such contract of indemnity is relied on by the appellee here.

■■■ The second situation is that in which the owner of an automobile is permitted to sue the person who was driving the vehicle at the time of the negligent injury which subsequently resulted in a judgment against the owner. Those cases are typified by Hutchins v. Frank E. Campbell, Inc., Fla.App.1960, 123 So.2d 273. The third group falls within the principle announced by the Florida District Court of Appeals in Winn-Dixie Stores, Inc. v. Fellows, Fla. App. 1, 1963, 153 So.2d 45. That is the case that announces the principle that as between two persons either of whom may be guilty of negligence causing an injury to a third party, indemnity will be allowed "where the injury has resulted from a violation of the duty which one [defendant] owes the other, so that as between themselves, the act or omission of the one from whom indemnity is sought is the primary cause of the injury."

In the Winn-Dixie case a customer of the Winn Dixie store was injured when a carton of Pepsi-Cola fell from a stack by reason of faulty arrangement of the display of the bottled goods. The evidence being without dispute that Winn-Dixie personnel observed the arrangement of the cartons of Pepsi-Cola and did not correct any defects in the method of stacking the cartons, and it also being open to the jury to ascertain that the manner of stacking by Pepsi-Cola employees was negligent, the trial court held that Winn-Dixie's third party complaint against Pepsi-Cola should be dismissed as a matter of law, because on the admitted facts both parties could be found by the jury to be guilty of active negligence, and as a matter of law if the conduct of Pepsi-Cola was negligent. Winn-Dixie was equally negligent in permitting the condition to continue.

While it is true that there was no contractual obligation running from Pepsi-Cola to Winn-Dixie by which Pepsi-Cola undertook not to act negligently towards the former's customers, this makes no difference because, as we have said, General Dynamics was not damaged by the breach of any contract. If the facts were such as would permit a jury to find that the conduct by Pan American was the real or primary cause of the injury to Adams rather than the conduct of General Dynamics, the Florida cases would permit the third party action to proceed. This issue, however, is foreclosed by the fact that the jury has found General Dynamics guilty of negligent conduct of its own no matter how negligent Pan American may have been.

Because the jury in the main case may well have ascertained that General Dynamics was liable by reason of the actions

of Wright in starting the elevator under the circumstances outlined above, the negligence of General Dynamics can not fall within the category of passive negligence or negligence of secondary causation, as was the case in the Florida cases of Seaboard Air Line Railway Co. v. American District Electric Protective Co., 1932, 106 Fla. 330, 143 So. 316. In that case, the Railroad having paid off the claim of an injured employee who was knocked off a train by a low hanging wire installed by the Electric Protective Co., the court held that the low installation, which was done under contract, impliedly warranting a non-negligent installation, was, as between the parties, the primary cause of the injury. The same rule was the basis of recovery in Suwannee Valley Electric Cooperative v. Live Oak, P. & G. R. Co., Fla.1954, 73 So.2d 820. Moreover, these two cases may be considered somewhat controlled by the fact that the initial recoveries against the railroads came under the Federal Employers' Liability Act, giving a statutory right of recovery as to which the quantum of proof as to negligence and certain defenses are substantially different from common-law negligence actions. They thus fall somewhat in the category of the maritime cases decided by the Supreme Court and discussed above.

We conclude that where, as here, a recovery is had against one of two persons who might, but for the existence of the Workmen's Compensation Act, be sued as joint tort feasors, and the recovery is had, for specified acts of negligence committed by the defendant against whom recovery is had, the Florida cases do not permit a suit over against the other party on the ground that it also was guilty of similar or equally causative, but different, negligent acts, which might also have constituted a proximate cause of the injury to the original plaintiff.

The judgment in the main action in favor of Mrs. Adams in her representative capacities is affirmed.

The judgment in the third party action Pan American World Airways is reversed and the case is remanded to the trial court for further proceedings not inconsistent with this opinion.