432 F.2d 1267
 Harold S. CHEEK, Jr., Plaintiff-Appellant,
v.
AGRICULTURAL INSURANCE COMPANY OF WATERTOWN, NEW YORK, a
corporation doing business in the State of Florida, and the
Hanover Insurance Company of New York, a corporation doing
business in the State of Florida, Defendants-Appellees.
 No. 30106 Summary Calendar.*
*Rule 18, 5th Cir.; See Isbell Enterprises, Inc
v.
Citizens Casualty Co. of New York et al., 5th Cir., 1970,
 
 1
 431 F.2d 409, Part. I.
 
 
 2
 United States Court of Appeals, Fifth Circuit.
 
 
 3
 Oct. 20, 1970.
 
 
 4
 Harold S. Cheek, Jr., a resident of Florida, brought an action in a Florida court against Agricultural Insurance Company of Watertown, New York, and the Hanover Insurance Company of New York, alleging that the insurance companies are liable to him for the full amount of a judgment rendered against him by a Florida court in a personal injury action. Cheek alleges that the failure of the insurance companies to disclose their relationship constituted a breach of their duty to act honestly and in good faith toward him in the defense of the action and therefore rendered them lible to compensate him to the extent of the judgment against him. The insurance companies removed the case to the United States District Court for the Southern District of Florida on the ground of diversity of citizenship. At the conclusion of all the evidence, the court directed the jury to render a verdict against Cheek and thereafter entered a final judgment against him. On appeal to this Court, Cheek contends that he produced sufficient evidence at the trial to require submission of the case to the jury. We affirm the judgment of the district court.
 
 
 5
 On July 25, 1965, Cheek was involved in an automobile accident in which the driver of the other car, John Paul Cover, was seriously injured. In January 1966 Cover brought a personal injury action against Cheek in a Florida court. At the time of the accident Cheek was insured by Agricultural under a policy limited to $10,000 a person for bodily injuries and $5,000 an occurrence for property damage. The policy also obligated Agricultural to defend the action. On January 31, 1966, Eugent L. Heinrich, an attorney, wrote Cheek to advise him that Cheek's insurance carrier had retained him to defend the action. Actually Heinrich had been retained by Hanover, which had purchased the Florida business of Agricultural and acted for Agricultural in the handling of claims on the purchased Florida policies. Heinrich also informed Cheek that Cover sought damages in excess of the limits of Cheek's policy and thus that Cheek had the right to retain his own attorney to associate with Heinrich on the case. In July 1966 Cover voluntarily dismissed the action against Cheek. On October 7, 1966, however, Cover filed a second action in the Florida court against Cheek: this time he also sought damages from the Florida Guard Rial Company, the Cheek family corporation, on the theory that the company owned the automobile driven by Cheek at the time of the accident. Florida Guard Rail was insured by Hanover under a policy with coverage up to $100,000 for injury to each person and $100,000 for property damage for each accident. Hanover again retained Heinrich to defend the action, and he filed answers on behalf of both Cheek and Florida Guard Rail. On Heinrich's motion, the court later entered summary judgment in favor of Florida Guard Rail. Cover then amended his complaint to include Harold S. Cheek, Sr., Cheek's father, as a defendant. A jury awarded Cover $85,000 in damages, and the court entered judgment in that amount against the Cheeks jointly and severally. Hanover paid Cover $10,000, the full limits of Cheek's coverage, for personal injuries and $1,949.50 for property damage. There remains unpaid on the judgment $73,050.50 with six percent interest from September 18, 1967. Cheek then instituted this action against the insurance companies on the theory that their failure to disclose to him their relationship resulted in the entry of the judgment against him in excess of the limits of his insurance policy. He thus sought to hold the insurance companies liable for the excess judgment.
 
 
 6
 The law of Florida imposes a duty upon the insurer to act honestly and in good faith toward the insured in the defense and settlement of claims when under the terms of the policy the insurer has the exclusive right to defend and negotiate a settlement. Tully v. Travelers Ins. Co., N.D.Fla. 1954, 118 F.Supp. 568, 569; Auto Mut. Indemnity Co. v. Shaw, 1938, 134 Fla. 815, 184 So. 852, 859; McNulty v. Nationwide Mut. Ins. Co., Fla.Ct.App. 1969, 221 So.2d 208, 210. The insurer will thus be liable for any damage caused by his failure to act in good faith. Burton v. State Farm Mut. Automobile Ins. Co., 5 Cir. 1964, 335 F.2d 317, 324 n. 14. To recover against the insurer, a Florida insured must produce evidence of the insurer's bad faith and the causal connection between that bad faith and the damage sustained. See Seward v. State Farm Mut. Automobile Ins. Co., 5 Cir. 1968,392 F.2d 723, 727; American Fidelity Fire Ins. Co. v. Johnson, Fla.Ct.App. 1965, 177 So.2d 679, 682-683. Ordinarily, whether the insurer has acted in bad faith and thus must respond in damages is a question for the jury. Liberty Mut. Ins. Co. v. Davis, 5 Cir. 1969, 412 F.id 475, 481; Springer v. Citizens Cas. Co., 5 Cir. 1957, 246 F.2d 123, 128-129. Nevertheless, we conclude that under the test of Boeing Co. v. Shipman, 5 Cir. 1969, 411 F.2d 365, the district court did not err in directing a verdict in this case.[1] There is no substantial evidence from which a jury could infer that the insurer acted in bad faith or that the acts of the insurer caused the excess judgment to be entered against Cheek. Compare Liberty Mut. Ins. Co. v. Davis, 5 Cir. 1969,412 F.2d 475, 481-482.
 
 
 7
 Despite the generality of the statement that an insurer must act in good faith toward his insured, in every case in which a Florida insured has recovered from his insurer the excess of a damage award over the limits of his policy, there has been a common factor-- the refusal of the insurer to settle a claim within the limits of the policy. See, e.g., Tully v. Travelers Ins. Co., supra; American Fidelity Fire Ins. Co. v. Johnson, supra; American Fire & Cas. Co. v. Davis, Fla.Ct.App.1962, 146 So.2d 615. As this Court said in Seward v. State Farm Mut. Automobile Ins. Co., supra, 'the insurer is not liable for bad faith * * * in the absence of an offer to settle.' 392 F.2d at 728. Thus it is well-established that under the law of Florida if the insurer has no opportunity to settle within the limits of the policy, it cannot incur liability for the excess judgment. Bush v. Allstate Ins. Co., S.D.Fla.1969, 296 F.Supp. 368, 369, aff'd, 5 Cir. 1970, 425 F.2d 393. It is undisputed that the insurer in this case never refused to settle the Cover claim within the limits of the Cheek policy; at no time did Covr even offer to settle within those policy limits. Moreover, on more than one occasion Heinrich himself offered to settle for the full limits of the policy, but his offers were rejected.
 
 
 8
 Cheek bases his action against the insurance companies solely upon their failure to disclose to him their relationship. He contends that he believed that Agricultural was providing his defense and protecting his interest without regard to the interest that Hanover had in the litigation by virtue of the claim against Florida Guard Rail. Not knowing that Hanover actually controlled the defense of both defendants, he was deprived of his right to exercise a free and independent judgment of what action was required to best protect his own interests. He contends that had he known the true facts he could have employed independent counsel, who might have discovered evidence that Florida Guard Rail owned the vehicle. In that case the verdict could well have been against both Cheek and Florida Guard Rail, and Hanover would have been liable, under the terms of its policies, for the full amount of the judgment. Accepting as true Cheek's allegation that he knew nothing of the relationship between Agricultural and Hanover, we conclude that this fact alone does not raise a jury issue as to the bad faith of the insurance companies. As a matter of Florida law, an insurer cannot be held guilty of bad faith such as to render it liable for the excess judgment in the absence of evidence that he wrongfully refused to settle the claim. See Seward v. State Farm Mut. Automobile Ins. Co., supra; Bush v. Allstate Ins. Co., supra.
 
 
 9
 In addition, Cheek offers no evidence upon which a jury could infer that the nondisclosure by the insurance companies proximately caused the judgment in excess of his policy limits to be entered against him. Quite obviously, Cover joined Florida Guard Rail as a defendant in the scant hope that a 'deep pocket' could be found to pay the judgment. Cheek has offered no evidence that Florida Guard Rail owned the automobile driven by Cheek at the time of the accident. Cheek, his father, and his father's attorney all agreed that Florida Guard Rail did not own the vehicle. It is undisputed that cheek was not covered under the Florida Guard Rail's liability insurance policy. Thus there is no suggestion that the Florida court acted improperly in granting summary judgment in favor of Florida Guard Rail. The mere speculation that 'independent counsel might have discovered evidence that Florida Guard Rail owned the vehicle' and that a jury verdict against the company might have withstood an appeal is insufficient evidence to raise a jury question as to the causal connection between the fact of nondisclosure and the excess judgment.[2] See Boeing Co. v. Shipman, 5 Cir. 1969, 411 F.2d 365, 374.
 
 
 10
 Finding no evidence upon which a jury could render a verdict for Cheek, we conclude that the trial court acted properly in directing a verdict for the insurance companies. Accordingly, the judgment of the district court is affirmed.
 
 
 
 [1]
 'On motions for directed verdict and for judgment notwithstanding the verdict the Court should consider all of the evidence-- not just that evidence which supports the non-mover's case-- but in the light and with all reasonable inferences most favorable to the party opposed to the motion. If the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict, granting of the motions is proper. On the other hand, if there is substantial evidence opposed to the motions, that is, evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motions should be denied, and the case submitted to the jury. A mere scintilla of evidence is insufficient to present a question for the jury. The motions for directed verdict and judgment n.o.v. should not be decided by which side has the better of the case, nor should they be granted only when there is a complete absence of probative facts to support a jury verdict. There must be a conflict in substantial evidence to create a jury question. However, it is the function of the jury as the traditional finder of the facts, and not the Court, to weight conflicting evidence and inferences, and determine the credibility of witnesses.' Boeing Co. v. Shipman, 5 Cir. 1969, 411 F.2d 365, at 374-375
 
 
 [2]
 Parenthetically, it is difficult to see how Cheek has suffered any harm by virtue of the disappearance of Florida Guard Rail from the Cover suit. As the case stands now, Cheek and his father are jointly and severally liable for the full amount of the judgment, $85,000, plus costs. As per Cheek's policy, Hanover has paid Cover $11,949.50 for his personal injuries and property damage. There remains unpaid on the judgment $73,050.50 plus six percent interest from September 18, 1967. If the jury had found that Florida Guard Rail owned the automobile, Cheek would still have been liable for the full amount of the judgment. It is true that Florida Guard Rail-- or rather, its insurer Hanover-- would have been jointly and severally erally liable, but since it is admitted that Cheek was not covered under the company's policy, Hanover would have a right of indemnity from the active tortfeasor Cheek. See General Dynamics Corp. v. Adams, 5 Cir. 1965, 340 F.2d 271, 280; Hertz Corp. v. Ralph M. Parsons Co., D.Fla.1968, 292 F.Supp. 108, 111; Hertz Corp. v. Richards, Fla.Ct.App.1969, 224 So.2d 784, 785. Thus instead of owing Cover an additional $73,050.50, Cheek would owe the same amount to Hanover
 It is of course Cheek's father who has been injured by the disappearance of Florida Guard Rail from the case. As a result of Cover's amended complaint, he is now jointly and severally liable for the remaining $73,050.50. Doubtless he now wishes that Florida Guard Rail, who is fully insured by Hanover, owned his son's car. Nevertheless, since he did not enter the case until after the omissions complained of occurred, he is in no position to press a claim for nondisclosure against the insurance companies. The insurance companies simply owed no duty to him.