IOWA POWER AND LIGHT COMPANY, appellant, v. ABILD CONSTRUCTION COMPANY, appellee.

No. 51665.

July 14, 1966.

318

Duncan, Jones, Riley & Davis, of Des Moines, for appellant.

Tolbert C. Moore, Bradshaw, Fowler, Proctor & Fairgrave and Gibson, Stewart & Garrett, all of Des Moines, for appellee.

STUART, J.—This is an action for indemnity or contribution in which Iowa Power and Light Company, hereinafter referred to as Ipalco, seeks to recover all or one half of $177,090.79 which it paid to settle a judgment rendered against it in a suit for personal injuries sustained by Glenn Visser. He was severely injured while working as an employee of Abild Construction Company on the construction of a grain storage building when an angle iron he was holding came into contact with a 13,000-volt power line belonging to Ipalco. It is conceded the amount, which includes the cost of defense, is reasonable.

Action was brought in four counts. Count I asked for indemnity on the ground that Visser's injury was caused by Abild's primary and active negligence. Count II sought contribution from Abild on the ground that its negligence concurred with that of Ipalco to produce the injury. Count III sought indemnity on the ground that Abild breached a duty to Ipalco by failing to give notice when construction work neared the electric line as agreed. Count IV sought contribution on the same ground. The trial court refused to submit Counts I, II and IV to the jury and submitted Count III on the theory of breach of contract. The jury returned a verdict for defendant on Count III. We conclude the trial court was correct in refusing to submit Counts I, II and IV, but erred in the manner in which Count III was submitted. Several errors are urged and pertinent facts will be presented as each error is discussed.

The main issue on this appeal is the effect of the Workmen's Compensation Law on an action of this kind. The trial court applied the "common liability" rule and held the claims for noncontractual indemnity and common-law contribution were barred.

I. We shall first consider the effect of the Iowa Workmen's Compensation Law on the right of equitable contribution. Since Best v. Yerkes, 247 Iowa 800, 77 N.W.2d 23, 60 A. L. R.2d 1354, we have been among the ever growing number

of jurisdictions which permit contribution between joint tort-feasors where there was no intentional wrong, moral turpitude or concert of action. Hawkeye-Security Ins. Co. v. Lowe Construction Co., 251 Iowa 27, 31, 99 N.W.2d 421, 425; Annotation, 60 A. L. R.2d 1366, 1377. We have followed the majority rule and have conditioned this right of contribution on "common liability". Best v. Yerkes and Hawkeye-Security Ins. Co. v. Lowe Construction Co., both supra; Fane v. Hootman, 254 Iowa 241, 245, 117 N.W.2d 435; Public Service Elec. & Gas Co. v. Waldroup, 38 N. J. Super. 419, 119 A.2d 172, 179; Employers Mutual Liability Ins. Co of Wis. v. Griffin Construction Co., Ky., 280 S.W.2d 179, 184, 53 A. L. R.2d 967; Zotta v. Otis Elevator Co., 64 N. J. Super. 344, 165 A.2d 840, 842. Annotations, 60 A. L. R.2d 1366, 1384, 19 A. L. R.2d 1003, 53 A. L. R.2d 979. "Common liability has been conceived as a liability which is enforceable against each tort-feasor individually." Harper and James, The Law of Torts, Volume I, section 10.2, page 718.

■■ Ipalco-recognizes we have applied the common liability rule as a basis for recovery-over in the form of contribution but urges us to abandon the rule and allow equitable contribution between joint tort-feasors on proof of concurrent negligence and proximate cause. The effect of such change is readily apparent in instances like the one before us. Defendant-employer, one of the parties alleged to be guilty of concurrent negligence, has a special defense to an action by the injured third party. Its liability to its employee is governed by the Iowa Workmen's Compensation Law and is not dependent upon negligence. Bradshaw v. Iowa Methodist Hospital, 251 Iowa 375, 387, 101 N.W.2d 167. The same act deprives the employee of the right to sue it for damages. 1962 Code of Iowa, section 85.20; Bridgmon v. Kirby Oil Industries Inc., 250 Iowa 229, 231, 93 N.W.2d 771. Thus there can be no common liability between Abild and Ipalco and application of that rule deprives Ipalco of the opportunity to secure contribution from Abild. If the test were as urged by Ipalco, proof of concurrent negligence which was the proximate cause of the injury would permit contribution in spite of the Workmen's Compensation Law.

320

·There are arguments for both rules which, when considered alone, sound irresistible. An employer can complain with considerable cogency the net result of a rule permitting contribution is to put money in the employee's pocket which has left the employer's pocket in spite of a plain statement that the employer's liability for a compensable injury shall be limited to compensation payments. At the same time a third party can argue with equal cogency that it is unfair to subject him to the entire damages when he would be entitled to contribution but for the sheer chance that the other parties happened to be under a compensation act. "Why should he, a stranger to the compensation system, subsidize that system by assuming liabilities that he could normally shift to or share with the employer?" Larson's Workmen's Compensation Law, section 76.10, page 229.

The rights of these two parties whose negligence is alleged to have concurred to cause an injury are in direct conflict. Anomalous situations arise from the application of either rule. Under the common liability rule an employer is better off if his negligence concurs with that of another in causing an injury to an employee than he would be if there was no negligence at all. He may be entitled to recoup his payments under Workmen's Compensation from the amount received by an employee from the third party, who, at the same time, is denied contribution. If no negligence were involved, he would be required to pay compensation without reimbursement. Employers Mutual Liability Ins. Co. of Wis. v. Griffin Construction Co., Ky., 280 S.W.2d 179, 185, 53 A. L. R.2d 967.

If we approve of a rule permitting contribution on proof of concurrent negligence and proximate cause, the employer would be better off if the accident resulted solely from his negligence than he would be if it merely concurred with the negligence of another. His liability would be determined by the Workmen's Compensation Law and there would be no joint tort-feasor to seek contribution. Such rule would also permit an injured employee to recover indirectly from his employer for injuries when he could not do so directly. A special defense would be lost merely because the employer's negligence concurred with that of another.

We have found no jurisdictions other than Pennsylvania and Maine which have approved contribution in instances where there was no common liability. In Puller v. Puller, 380 Pa. 219, 221, 110 A.2d 175, 177, the Pennsylvania court said: "* * * it is established in our own State that a tort-feasor has a right of contribution against a joint tort-feasor even though the judgment creditor be the latter's spouse, parent, or minor child; in other words, a tort-feasor may recover such contribution even though, for some reason, the plaintiff who has obtained a judgment against both of them is precluded from enforcing liability thereunder against the joint tort-feasor: [Citing cases]. The theory is that as between the two tort-feasors the contribution is not a recovery for the tort but the enforcement of an equitable duty to share liability for the wrong done."

It is interesting to note, however, that the husband's insurance company was not required to make the contribution because injury to members of the family was excluded under the policy.

The Maine court in Bedell v. Reagan, 159 Maine 292, 192 A.2d 24, permitted contribution from the husband of an injured wife. Much attention was given the special defense based on the matrimonial relationship and the court concluded the rationale supporting the disability of reciprocal spouses as opposing litigants must give way before the penalty thereby imposed on a third party. While the analogy between this special defense and that of a compensable injury under the Workmen's Compensation Laws is appropriate, the rationale back of the two special defenses is entirely different. Maine might apply the same rule if an employer-employee relationship were involved, but they would have to answer arguments made here which could not have been advanced in Bedell v. Reagan.

Neither rule can be supported with irrefutable logic. However, it must be remembered that not too long ago a tort-feasor's right to contribution under any circumstance was doubtful. It is not unreasonable, therefore, to limit contribution to those instances in which the other tort-feasor does not have a special defense against an action by the injured party. "* * * it is the same system of jurisprudence which gives the right of contribution which prescribes the terms on which the remedy is

available." Allied Mutual Casualty Co. v. Long, 252 Iowa 829, 835, 107 N.W.2d 682, 685.

An overwhelming majority of the jurisdictions follow the rule of common liability. The situation is not so one-sided we are persuaded we should abandon the majority rule for one which seems to have at least as many incongruities. "A situation like this ought to be dealt with legislatively. It is rather inconsiderate to force courts to speculate about legislative intention on the strength of statutory language in framing which the draftsman had not the remotest trace of the present question in their minds. The legislature should face squarely the question whether the third party who happens to be so unfortunate as to get tangled up with a compensable injury should, so to speak, individually subsidize the compensation system by bearing alone a burden which normally he could shift to the employer." Larson's Workmen's Compensation Law, section 76.53, page 243.

We hold the trial court did not err in refusing to submit Count II to the jury.

II. Ipalco claims the argument that contribution or indemnity from an employer allows an employee to do indirectly that which could not be done directly has been answered by our decision in Blackford v. Sioux City Dressed Pork, Inc., 254 Iowa 845, 853, 118 N.W.2d 559, 565. There, a third party was permitted to seek indemnity from the employer of the injured employee. The third party conceded it would have no right of contribution in any event, "probably because there can be no joint liability of [the employer] and itself to the plaintiff, because [employer's] liability is different, being measured by the Iowa Workmen's Compensation laws." Page 849 of 254 Iowa, 561 of 118 N.W.2d.

 This case points up the distinction between contribution and indemnity. Contribution is based on concurrent negligence of the parties toward the injured party and requires common liability. There are several different reasons for permitting indemnity: (1) express contract, Public Service Electric & Gas Co. v. Waldroup, supra, 119 A.2d, pages 181, 182; Ryan Stevedoring Co. v. Pan-Atlantic Steamship Corp., 350 U. S. 124, 76 S. Ct. 232, 100 L. Ed. 133; (2) vicarious liability

(respondeat superior or the statutory liability imposed on the owners of automobiles) Lunderberg v. Bierman, 241 Minn. 349, 63 N.W.2d 355, 364, 43 A. L. R.2d 865; Rozmajzl v. Northland Greyhound Lines, 242 Iowa 1135, 49 N.W.2d 501, 506; (3) breach of an independent duty running from the employer to the third party. Westchester Lighting Co. v. Westchester County Small Estates Corp., 278 N. Y. 175, 15 N.E.2d 567, 569; American District Telegraph Co. v. Kittleson, 8 Cir. (Iowa) 179 F.2d 946; Blackford v. Sioux City Dressed Pork, Inc., supra; (4) active (primary) as opposed to passive (secondary) negligence. Daly v. Bergstedt, 267 Minn. 244, 126 N.W.2d 242, 248; Davis v. Broad Street Garage, 191 Tenn. 320, 232 S.W.2d 355; Rozmajzl v. Northland Greyhound Lines, 242 Iowa 1135, 49 N.W.2d 501, 506, but see Hawkeye-Security Ins. Co. v. Lowe Construction Co., 251 Iowa 27, 99 N.W.2d 421, 426. The right of indemnity in the first three instances is based upon the relationship between the employer and the third party. Larson's Workmen's Compensation Law, section 76.10, page 230, sections 76.41, 76.42, 76.43. Westchester Lighting Co. v. Westchester County Small Estates Corp., supra; American District Telegraph Co. v. Kittleson, supra; Slattery v. Marra Bros., 186 F.2d 134, 139; Public Service Electric & Gas Co. v. Waldroup, 38 N. J. Super. 419, 119 A.2d 172, 179; Lunderberg v. Bierman, supra; Great Northern Railway Co. v. Bartlett Co., Grain, 8 Cir. (Iowa), 298 F.2d 90, 95; Slechta v. Great Northern Railway Co., 189 F. Supp. 699, 702, 703; Blackford v. Sioux City Dressed Pork, Inc., supra.

Only in those instances in which the party passively negligent has been allowed indemnity from the party actively negligent, do you have a situation in which "indemnity is only an extreme form of contribution". Slattery v. Marra Bros., 2 Cir., 186 F.2d 134, 138. Such cases involve concurrent negligence (of different degrees) of the tort-feasors toward the injured party. This form of indemnity is barred by the common liability rule when one of the tort-feasors is an employer under the Workmen's Compensation Act. Indemnity is permissible when the right arises out of a separate duty due the third party from the employer. The indemnity sought in Count I is of the fourth class set out and as such is barred. Public Service Electric & Gas Co. v. Waldroup, supra; Blunt v. Brown (Iowa), 225

F. Supp. 326, 330; Fane v. Hootman, 254 Iowa 241, 245, 117 N.W.2d 435, 437. In Slattery v. Marra Bros., 186 F.2d 134, 139, Chief Justice Learned Hand said: "So far as we can see therefore there is nobody of sure authority for saying that differences in the degrees of fault between two tort-feasors will without more strip one of them, if he is an employer, of the protection of the compensation act; and we are at a loss to see any tenable principle which can support such a result."

In American District Telegraph Co. v. Kittleson, 8 Cir. (Iowa), 179 F.2d 946, 952, the circuit court denied contribution because of the common liability rule, but permitted the action for indemnity to stand even though its basis was primary as opposed to secondary negligence. The decision appears to be contrary to our analysis of the cases hereinabove set out. The incongruity of permitting indemnity on concurrent negligence while denying contribution is avoided by stating "the law implies a promise of indemnity from one primarily liable to another secondarily liable for an injury to a third person".

This is a legal fiction we have difficulty in accepting. From a practical standpoint the line between primary and secondary negligence is difficult to draw and can approach the situation in which parties are in pari delicto. There is no logical reason why a similar implied promise should not be applied to contribution. Rather than impose such legal fictions on the profession, it would seem advisable just to abandon the common liability rule. See Larson's Workmen's Compensation Law, section 76.44, 76.44(a)(b)(c).

However, we need not and do not decide this question here as we do not view this case as one of primary versus secondary negligence. The only allegations which, in our opinion, tend to support a charge of primary negligence on the part of the employer are those which deal with the failure of Abild to notify Ipalco when the lines should be moved or the current turned off as they allegedly agreed to do. These were matters of contract between the parties and the duties arise out of the contract. In the absence of contract, the failure to notify would not make Ipalco's negligence secondary.

"It was plaintiff's duty to construct, locate and guard its

high voltage transmission lines in such a manner as not to be dangerous to the public and those, to its knowledge, working near and about them, and this duty could not be shifted to the defendant. Its failure to properly discharge this duty in the respects previously adverted to herein constituted, in our judgment, active and not passive negligence." Public Service Electric and Gas Co. v. Waldroup, 38 N. J. Super. 419, 434, 119 A.2d 172, 181. See Cronk v. Iowa Power and Light Co., 258 Iowa 603, 138 N.W.2d 843.

In Blackford, supra, on 851 of 254 Iowa, we agreed with the holding in Kittleson that the Iowa Workmen's Compensation Law was not intended to take away all a third party's rights to sue an employer. We recognized "liability of the employer may be found in a proper case for indemnity". We held the terms of the contract between the employer and the third party whereby employer agreed to clean third party's premises and machinery carried with it an implied promise to do the work in a safe manner. The method of cleaning was left to the employer. The obligation on which suit was brought arose out of the contract. Page 855. See Ryan Stevedoring Co. v. Pan-Atlantic S. S. Corp., 350 U. S. 124, 76 S. Ct. 232, 100 L. Ed. 133; Crumady v. The Joachim Hendrik Fisser, 358 U. S. 423, 79 S. Ct. 445, 3 L. Ed.2d 413. Primary and secondary negligence were not involved.

We hold any right of indemnity here must be based on the duties assumed under the alleged agreement to notify Ipalco. The trial court was right in not submitting Count I.

III. As heretofore pointed out, the cases from Maine and Pennsylvania, the only two jurisdictions which have permitted contribution or indemnity between parties concurrently negligent when one of them has a special defense against the injured party, involve the right of contribution from the spouse of an injured party. Ipalco claims there is less reason to prohibit contribution from an employer because the tradition of public policy against suits between spouses does not exist. It argues an employer has always been liable for injury to an employee and that workmen's compensation has permitted them to agree on a different procedure for enforcing the liability and determining the amount of recovery.

It is questionable whether public policy against interspousal suits provides as strong a basis for denying contribution and indemnity as the creation of an exclusive statutory remedy under the Workmen's Compensation Act, but we need not decide that question. The compensation act entirely changes the basis of the liability between employer and employee. Common-law negligence has been replaced by liability without fault and actual damages have been replaced by a fixed schedule of payments. It cannot be dismissed as merely procedural.

When faced with an argument similar to that advanced here, the Supreme Court of Kentucky in Employers Mutual Liability Ins. Co. of Wis. v. Griffin Construction Co., supra, 280 S.W.2d, page 184, 53 A. L. R.2d, page 975, said: "It is clear the Workmen's Compensation Act extinguishes the liability of the employer to the employee for negligence of the former. [Citing case] Plaintiff argues that the employee's common law cause of action was not extinguished but that his remedy was suspended by the Act. This is simply a play upon words. If the employee cannot recover damages for negligence of the employer, there is no liability of the employer, and consequently there could be no common liability with a third party. An employer operating under the Act cannot be a joint tort-feasor with a third party who injures his employee."

We have heretofore decided to abide by our previous pronouncements, stay with the overwhelming majority and apply the common liability rule. There can be no common liability as defined in the cases when one of the parties has a special defense to an action by the injured party.

IV. Ipalco argues that if "some kind of duty flowing from the employer to the third party on which to predicate the cause of action for contribution or indemnity" is necessary, "such duty exists at all times and in all legal relationships, simply as the duty not to cause injury to another by one's negligent act".

The argument cannot apply to contribution. As we stated in Division I, contribution is based on concurrent negligence of joint tort-feasors toward the injured party. An independent duty due the third party by employer can only be the basis of indemnity. Nor do we believe the cases support the granting of

indemnity on the basis suggested by Ipalco. Westchester Lighting Co. v. Westchester County Small Estates Corp., 278 N. Y. 175, 15 N.E.2d 567, cited by Ipalco is not factually similar to the case at bar. There defendant broke plaintiff's gas line and negligently enclosed the point of fracture in a tile drain. The escaping gas asphyxiated an employee of defendant. His administrator recovered judgment against plaintiff. Plaintiff sought indemnity. It was held the Workmen's Compensation Law did not constitute a valid defense as plaintiff's cause of action was based on the breach of an independent duty owed by the employer to the third party. The general duty suggested by Ipalco is too broad to serve as a basis for permitting indemnity.

It makes no difference whether Ipalco's negligence was "active" or "passive". Under our reasoning in Division II, indemnity for such reason would depend on concurrent negligence toward the injured party rather than an independent duty from employer to the third party and as such would be subject to the common liability rule and must fail when there is a special defense.

V. Ipalco claims the denial of the common-law right of contribution and indemnity violates the due process clause of Amendments 5 and 14 to the United States Constitution and Article I, section 9, of the Constitution of Iowa, denies it equal protection of the laws under Amendment 14 to the United States Constitution and does not have a uniform operation and grants special privileges and immunities in violation of Article I, section 6, of the Constitution of Iowa. In view of the large number of cases in which the right of contribution or indemnity from an employer has been considered, it is surprising there is not more authority on this point. The only three cases found which have dealt with this problem have upheld its constitutionality. Coates v. Potomac Electric Power Co., 95 F. Supp. 779, 782, 783; Hill Lines, Inc. v. Pittsburg Plate Glass Co. (10 Cir.), 222 F.2d 854, 858; Royal Indemnity Co. v. Southern California Petroleum Corp., 67 N. M. 137, 353 P.2d 358, 362. The district court in Coates, supra, concluded contribution has been recognized because of equitable considerations and is not such a vested right that legislation may not impinge thereon. This case is cited with approval in Hill Lines, Inc., supra.

We upheld the constitutionality of the Iowa Workmen's Compensation Act when it was challenged in Hilsinger v. Zimmerman Steel Co., 193 Iowa 708, 713, 187 N.W. 493, on the ground that it discriminated against parents of minors engaged in industrial pursuits as it deprived them of the vested right to maintain a cause of action for the value of said minor's services. We believe this is an appropriate analogy.

The condition of common liability imposed on the right to contribution is a reasonable one and does not violate any constitutional rights of a third party. Any right to common-law contribution is of rather recent origin in the United States and it is proper for the courts to prescribe the terms under which it may be exercised.

VI. At the time of the injury, Abild was constructing a grain storage building for Bates-Couch Terminal Elevator Company of West Des Moines. Ipalco sought to introduce the contract between Abild and Bates-Couch and testimony relating thereto claiming it was a "third-party beneficiary of the obligations assumed by Abild to do its work in good order and in workmanlike manner, to erect and maintain all necessary safeguards for the protection of the workmen and the public, and to protect adjacent property owners". The trial court refused to admit the contract and related testimony into evidence and refused to instruct thereon. We agree.

In two of the cases relied on by Ipalco, Blackford v. Sioux City Dressed Pork, Inc., 254 Iowa 845, 118 N.W.2d 559, and Ryan Stevedoring Co. v. Pan-Atlantic Steamship Corp., 350 U. S. 124, 76 S. Ct. 232, 100 L. Ed. 133, the assumed duties to do the work in a careful, safe workmanlike manner grew out of direct contractual relationships and the question of a third-party beneficiary was not involved. In Crumady v. Joachim Hendrik Fisser, 358 U. S. 423, 79 S. Ct. 445, 3 L. Ed.2d 413, and Waterman S. S. Corp. v. Dugan & McNamara, Inc., 364 U. S. 421, 81 S. Ct. 200, 5 L. Ed.2d 169, shipowners were permitted to seek indemnity from stevedores for failure to perform services in a safe, careful, workmanlike manner although the contract was between the stevedore and a charter party in one instance (Crumady) and the stevedore and a consignee in the other

(Waterman). The United States Supreme Court said: "The warranty which a stevedore owes when he goes aboard a vessel to perform services is plainly for the benefit of the vessel whether the vessel's owners are parties to the contract or not. That is enough to bring the vessel into the zone of modern law that recognizes rights in third-party beneficiaries." Crumady v. Joachim Hendrik Fisser, supra, page 428 of 358 U. S.

It seems an injured party may bring an action in rem against the vessel when an injury occurs as a result of its "unseaworthiness". In Crumady the vessel was permitted to seek indemnity. In Waterman the owner was given the same right. It is understandable why an owner faced with absolute liability because of "unseaworthiness" would be considered a third-party beneficiary of a contract to which he was not a formal party where the manner in which the work was done directly affected the seaworthiness of the vessel. There is a much closer relationship between the owner and the contracting parties than exists in the instant case. Suppose the party seeking indemnity were the owner of a second vessel which collided with the one covered by a stevedore contract causing improperly stored cargo to fall and injure an employee of the stevedore company. It is doubtful he could successfully claim to be a third-party beneficiary of the contract with the stevedore company. This illustration more clearly parallels the one before us. We consider Ipalco to be no more than an incidental beneficiary to the contract.

In order for Ipalco to acquire any rights as third-party beneficiary of the contract between Abild and Bates-Couch, it must show it was either a donee beneficiary or a creditor beneficiary under the terms of the contract. Olney v. Hutt, 251 Iowa 1379, 105 N.W.2d 515, 519. One is a donee beneficiary if it appears from the terms of the promise in light of surrounding circumstances " 'that the purpose of the promisee in obtaining the promise of all or part of the performance thereof is to make a gift to the beneficiary or to confer upon him a right against the promisor to some performance neither due nor supposed or asserted to be due from the promisee to beneficiary.' " Olney v. Hutt, supra, 251 Iowa at 1386. One is a creditor beneficiary if no purpose to make a gift appears from

the terms of the promise and accompanying circumstances but " 'performance of the promise will satisfy an actual or supposed or asserted duty of the promisee to the beneficiary.' " Olney v. Hutt, supra, 251 Iowa at 1386. One is merely an incidental beneficiary and no rights accrue to him from the contract if he fails to qualify as either a donee beneficiary or a creditor beneficiary. Olney v. Hutt, supra, 251 Iowa at 1383, 1385, 1386. See also Johnson Farm Equip. Co. v. Cook, 230 F.2d 119 at 124.

It has been said that a stranger to the contract must at least show that the contract was intended for his direct benefit before he can avail himself of the exceptional privileges of suing for breach of the contract. Olney v. Hutt, supra, 251 Iowa at 1383; Johnson Farm Equip. Co. v. Cook, supra, 230 F.2d at 124.

The terms of the contract on which Ipalco relies are as follows: Article 9 of the General Conditions provided, in part:

"* * * both workmanship and materials shall be of good quality * * *

"The contractor (Abild) shall at all times enforce strict discipline and good order among his employees, and shall not employ on the work any unfit person or anyone not skilled in the work assigned to him."

Article 12 of the General Conditions provided:

"The contractor shall take all necessary precautions for the safety of employees on the work, and shall comply with all applicable provisions of Federal, State and Municipal safety laws and building codes to prevent accidents or injury to persons on, about or adjacent to the premises where the work is being performed. He shall erect and maintain at all times, as required by the conditions and progress of the work, all necessary safeguards for the protection of workmen and the public * * *

"In an emergency affecting the safety of life or of the work or of adjoining property, the contractor, without special instruction or authorization from the Architect or Owner, is hereby permitted to act, at his discretion, to prevent such threatened loss or injury, and he shall so act, without appeal, if so authorized or instructed."

It cannot be said this contract was clearly intended to confer direct benefits on Ipalco. The terms relied on appear to involve only the relationship between the parties and are de-

signed to protect the owner from faulty workmanship and liability to the workmen or public which might result from the contractor's failure to do the work in a workmanlike manner or provide all the necessary safeguards. It is this type of provision which would expressly give the owner the right of indemnity against the contractor for injury sustained by a workman or the public generally. We do not believe it can be stretched to provide indemnity in favor of a member of the public whose negligence concurred with contractor's to cause injury. We believe the trial court was right in refusing to admit the contract between Abild and Bates-Couch into evidence and excluding testimony relating thereto.

VII. Ipalco claims the construction contract referred to above was admissible on the question of agency and scope of authority of Abild's foreman. The point is important on issues hereinafter considered. Article 14 states: "The contractor shall keep on his work, during its progress, a competent superintendent and any necessary assistants, all satisfactory to the Architect. * * * The superintendent shall represent the contractor in his absence and all directions given to him shall be as binding as if given to the contractor."

It may well be that the contract, or portions thereof, would be admissible for that purpose. The difficulty is Ipalco in no way indicated it was seeking to introduce the contract for this purpose. Counsel for Ipalco stated the purpose was to establish the contract which created certain duties on the part of Abild which extend to the benefit of this plaintiff. No mention was made that it was offered to prove the extent of the authority of the foreman.

We held in Division VI the contract was not admissible for the purpose it was offered by Ipalco. If other portions were material and relevant for other purposes, the burden was on Ipalco to explain this. 88 C. J. S. 170, Trial, section 62c. Where the materiality is not apparent, the party offering it must disclose it. In In re Estate of Repp, 241 Iowa 190, 195, 40 N.W.2d 607, 610, we quote with approval from Votaw & Hartshorn v. Diehl, 62 Iowa 676, 13 N.W. 757, 18 N.W. 305, as follows: "The true rule, we think, is that, when it is apparent upon the face

of the question asked the witness what the evidence sought to be introduced is, and that it is material, this is sufficient; but when this is not apparent, then the party seeking to introduce the evidence is required to state what he expects to prove, and thus make its materiality appear."

The same reasoning applies to the admission of exhibits.

VIII. Ipalco alleged and introduced evidence tending to prove that, prior to Visser's injury, Abild acting through its foreman agreed to notify Ipalco "a day or two ahead of time before proceeding with work at the northeast corner of such building, and plaintiff agreed, upon receiving such notification, to take safety precautions such as shutting off electrical service on the line during the period of construction near the line or moving the line temporarily away from the immediate vicinity of the work." Ipalco alleged Abild, notwithstanding the assumption of these duties, "failed and neglected to notify plaintiff that said work was being undertaken at said time and place and plaintiff had no knowledge of same".

The trial court submitted Count III as an action for breach of contract. Ipalco contends it pleaded the count in tort alleging a breach of duty arising out of contract and that "the court has thereby reshaped and distorted plaintiff's cause of action into something different from that which is alleged in its petition * * * and is depriving the plaintiff of the opportunities to submit its theory of the action to the jury which theory has been expressly recognized by the Iowa Supreme Court in Blackford v. Sioux City Dressed Pork, Inc."

In Blackford we referred to a similar action as one "for negligence arising out of breach of contract". In Kunzman v. Cherokee Silo Co., 253 Iowa 885, 891, 114 N.W.2d 534, 537, 95 A. L. R.2d 673, we quote from Matthys v. Donelson, 179 Iowa 1111, 1116, 160 N.W. 944, 946, as follows: "A tort may be dependent upon, or independent of, contract. If a contract imposes a legal duty upon a person, the neglect of that duty is a tort founded on contract; so that an action ex contractu for the breach of contract, or an action ex delicto for the breach of duty, may be brought at the option of the plaintiff." The pleadings support Ipalco's argument this was brought as a tort action.

Ipalco does not point to any specific prejudice which resulted from the submission of this count as contract rather than tort. We do not need to decide whether a showing of prejudice is necessary for a reversal on this ground as the case must be reversed for errors made in submitting it as a contract action and the method of submitting the case can be remedied on retrial.

IX. Ipalco, after alleging Abild's agreement to notify it before proceeding with work on the northeast corner, alleged Ipalco agreed "to take safety precautions such as shutting off electrical service on the line * * * or moving the line temporarily away from the immediate vicinity of the work". In paraphrasing the issues, the trial court omitted any reference to shutting off the power and then instructed the jury. "No duty or obligation was owing the plaintiff by the defendant unless *the agreement referred to in the foregoing statement of issues* was made and entered into by the plaintiff and defendant."

In Instruction No. 5 the trial court instructed the jury: "If you find that plaintiff has established by a preponderance or greater weight of the evidence that before construction work on the grain storage building described in this case had reached the east and there was a conversation between Mr. Swanson and Mr. Ford concerning the electric line or wire near the east end of said building during which it was suggested that Mr. Swanson's help would be needed when they reached the east end of the building, that Mr. Swanson told Mr. Ford to let him know a day or two ahead of time and he would either have the wire pulled sidewise or fixed in some way to provide more clearance and room in which to work, and that Mr. Ford said to Mr. Swanson that he would call him or have him called, then you will find there was such a meeting of the minds of Mr. Swanson and Mr. Ford as to create an agreement and that it was supported by a consideration; but otherwise not."

Ipalco claims "the jury should have been able to find that a meeting of the minds occurred on the subject of Ipalco's being called by Abild when the work neared the wires without being restricted to an express, verbal exchange of certain, precise words as set out in the instructions". We agree.

This agreement was an informal one under which it is alleged Abild agreed through its foreman to notify Ipalco when the work came near the power lines so that Ipalco could take the necessary safety precautions to protect the workmen. It was of no concern to Abild what specific precautions Ipalco elected to take. The recitations in the petition were as examples and not as a binding part of the agreement. The evidence tended to prove the line could have been de-energized, insulated with rubber or temporarily pulled away. There was evidence these methods were discussed. We believe the wording of this part of Instruction No. 5 unduly burdened Ipalco with unnecessary proof on this particular point. Were this the only error in the instructions, we would hesitate to reverse for this reason alone.

X. Ipalco also complains of that portion of Instruction No. 5 which expressly requires it to prove the foreman was an "agent" for Abild. It also objects to the definition of agent contained therein. Ipalco's petition alleged "that defendant's foreman, acting within the course of his employment and within the scope of his authority, agreed to notify plaintiff * * *". The term "agent" was not mentioned. This was met by a general denial.

The trial court instructed:

"Insofar as the above referred to agreement is concerned the defendant not only denies that an agreement was made but it denies that Mr. Ford was its agent and had authority to make such an agreement.

"One *who is employed to represent another in business dealings with others is an agent, while one who is employed to perform personal services for another is an employee.* The mere fact of a person's employment does not necessarily make him agent for his employer although he may be an agent. It is undisputed in this case that Mr. Ford was employed by the defendant as an ironworker foreman. There is no evidence in this case of an express appointment of Mr. Ford by the defendant as the latter's agent. However, an agency may be created by implication. An implied agency must be based on facts for which the principal is responsible and they must be such as to imply an intention to create the agency, and the implication must arise

from a natural and reasonable, and not from a forced, strained, or distorted construction of them. They must lead to the reasonable conclusion that mutual assent exists, and be such as naturally lead another to believe in and to rely on the agency. Whether there was an implied agency in this case establishing Mr. Ford as agent for the defendant is a question of fact for the jury, to be determined by the evidence and the reasonable inferences to be drawn therefrom. The existence of the relation will not be assumed. To entitle the plaintiff to recover in this case it must establish by a preponderance or greater weight of the evidence that if the aforementioned agreement was made and entered into it was made by Mr. Ford as agent for the defendant. Unless he was such agent any agreement made by him would not be binding on the defendant."

The issue created by the pleadings on this particular point was whether the foreman had the authority to make such agreement. The jury should not have been required to place the foreman in one of two legal pigeonholes, particularly when the distinction is so difficult to make.

"The distinction between principal and agent and master and servant is very difficult to define; the two relations are essentially similar and the real difference between them may be said to be one of degree only." 2 C. J. S. 1029, Agency, section 2(e).

In reality, the distinction between an agent and an employee is not as clear as the black-and-white definition contained in the instructions might lead a jury to believe. If a jury felt an ironworker foreman must be classified in accordance with the definitions given them in the instruction, they would undoubtedly classify him as an employee. Yet he, as foreman, must have the authority to bind Abild on certain matters connected with his work. For instance, he would certainly have authority to bind Abild to pay for a roll of wire necessary to perform his work. On the other hand he, of course, could not bind Abild to a new construction contract. We believe a jury question was created here on the authority of the foreman to bind Abild to an agreement to notify Ipalco. It was closely associated with his work and could have been implied. To further require the jury

to determine he was an agent rather than an employee as defined in the instruction could have been confusing to the jury and was prejudicial to Ipalco. We believe this constituted reversible error.

Abild argues Ipalco would not have been entitled to sue it for breach of the agreement to notify Ipalco if there had been no mishap and, if it was unenforceable absent an injury, it was unenforceable where such injury did eventuate. We believe this is a non sequitur. A cause of action requires damages. In the absence of injury it would be most difficult to show how Ipalco was damaged for failure to notify. The fact that no damages resulted from a breach of contract does not mean there was no contract in the first place. We believe there was mutuality of obligation and an enforceable contract. Suppose Abild had notified Ipalco to move the lines and they refused to do so for several days which held up the work on the building. Could not Abild under this agreement claim damages from Ipalco resulting from the delay? We hold there was a jury question generated on the existence of a valid, binding contract.

XI. Abild does not meet the errors discussed in Divisions IX and X directly. It claims it was entitled to a directed verdict. It first contends "the parties did not intend to effect a legal relationship and that their statements in no manner imported a willingness to be bound contractually." We do not agree. The terms of the agreement alleged in the petition were that Abild, acting through its foreman, "agreed to notify plaintiff a day or two ahead of time before proceeding with work at the northeast corner of such building, and plaintiff agreed, upon receiving such notification, to take safety precautions * * *." There is evidence to support such agreement. No such notice was given.

Although the mutual promises were simple, this fact alone does not prevent them from being a contract. Their importance is shown by the amount of money involved in this lawsuit. Abild argues these were mere expressions of intention and the statements could not be either an offer or an acceptance and at most contemplated that future contract relations might come about. The terms of the contract seem to be complete. Both parties

recognized the danger of working near these wires. At the trial a witness for Ipalco explained it was undesirable to have a temporary bypass in existence for an extended period. There is evidence Ipalco relied on Abild to notify it before doing what both parties knew needed to be done. There was evidence to support a jury finding a contract had been entered into.

XII. Abild argues even if there were a binding agreement, there was no evidence of an undertaking by Abild to indemnify Ipalco for the consequences of its own negligence. Abild cites cases which hold a contract for indemnity against the consequences of one's own negligent acts must be clear and definite in its provisions. Fidelity & Casualty Co. v. J. A. Jones Construction Co., 325 F.2d 605; Chicago, R. I. & P. R. Co. v. Williams, 245 F.2d 397. However, it is not claimed the contract here is a contract of indemnity. It is not a suit for breach of contract, but an action for damages alleged to have been sustained by Ipalco because Abild failed to perform the duties assumed by it under the claimed agreement. As stated under Division VII, it is an action sounding in tort.

Abild argues the general verdict in the Visser case amounted to a finding Ipalco was negligent in maintaining the line too close to the building, failing to insulate the line and failing to warn Visser of the hazard. It reasons there can be no recovery-over against Abild since there has been a finding Ipalco was negligent, even if Abild was also negligent. General Dynamics Corp. v. Adams, 340 F.2d 271, is cited as authority for this proposition.

There, an employee of Pan American was killed when an employee of General Dynamics operated an elevator which the deceased was repairing. General Dynamics constructed the elevator on a launching pad at Cape Kennedy missile base and Pan American contracted with the government to operate and maintain it. Indemnity was sought under an alleged contract between Pan American and General Dynamics which obligated "Pan American to perform its duties, including the maintenance of the elevator and its use while under repair in a non-negligent manner". The court held the jury had determined General Dynamics was liable for negligence of its own, unassociated with

the duties of Pan American, (1) in violating the Florida statute which required a safety door in the top of the elevator, (2) the actions of its employee in operating the elevator under the circumstances. The court said: "It is not permissible for another jury thereafter to determine that its damages were caused by a breach of contract." The third-party action was dismissed because "the jury has found General Dynamics guilty of negligent conduct of its own no matter how negligent Pan American may have been". (Concurrent negligence)

The cases are similar in the respect that Ipalco was found guilty of negligence of its own which we have held was active or primary. We believe they are distinguishable on the basis of the alleged contracts. There, Pan American was alleged to have contracted to do the work in a "non-negligent manner". It is understandable why in such case a party guilty of independent acts of negligence cannot receive indemnity from one also actively negligent.

Here, the jury could find: Abild agreed to do an act which directly affected the negligent acts of Ipalco which were submitted to the jury. Had Abild notified Ipalco, as it was alleged they agreed to do, Ipalco could have moved the lines or shut off the current. Ipalco's failure to do so constituted negligence against Visser. But, between Ipalco and Abild, the failure to exercise required safety precautions for Visser's protection was due to the failure of Abild to perform its contractual obligations. This is a different obligation from that in General Dynamics, supra. It is also different from the Blackford case where the employer contracted to take over the duties of third party. Here Abild contracted to notify Ipalco so it would know when to perform its duties. We believe proof of such agreement and its breach should entitle Ipalco to indemnity.

For reasons stated in Divisions VIII, IX and X the case is reversed and remanded for new trial.—Reversed and remanded.

GARFIELD, C. J., and LARSON, SNELL and MASON, JJ., concur.

BECKER, THORNTON and RAWLINGS, JJ., dissent.

MOORE, J., takes no part.

BECKER, J.—I concur in the result reached by the majority; i.e., remand for new trial. I must respectfully dissent from the conclusions reached in Divisions I to V.

This severe injury to Glenn Visser, defendant's employee, occurred while Visser was attempting to affix metal outlookers and angle irons to the framework of a building then being constructed. Long before the day of the accident responsible employees of both Ipalco and Abild knew that the contemplated work could not be safely accomplished in such close proximity to the 13,000 volt uninsulated electric transmission line that ran near the proposed building. At the instant of injury Visser was attempting to manipulate an angle iron more than 16 feet in length while sitting in a position that was only four feet two and one-half inches from the transmission line. Why Abild allowed, much less required, their employee to work in that area without having the electric line de-energized or moved, does not appear.

Visser could not sue his employer for negligence, section 85.20. He could and did sue the electric company, Ipalco. The jury verdict of $215,000 for injuries which included the loss of both arms was settled for $165,000. Costs of defense were $12,-909.79. It is for these combined sums that Ipalco seeks contribution or indemnity from defendant Abild, Visser's employer.

I. The majority recognize that the real issue here is the effect of the special defense afforded an employer by section 85.20 of our Workmen's Compensation Act on a third-party concurrent tort-feasor seeking indemnity or contribution. Does the existence of a special defense eliminate the right to seek contribution or indemnity as between common or joint tort-feasors? The terms concurrent, common and joint will be used hereinafter as synonymous for the purpose of this discussion. See Allied Mutual Casualty Co. v. Long, 252 Iowa 829, 834, 107 N.W.2d 682.

Harper and James, The Law of Torts, section 10.2, page 718:

"Where recovery of contribution is permitted, it is usually held that there must be a common legal liability on the part of the tort-feasor toward the injured person. Common liability is said to come into existence 'immediately after the acts of the tort-feasors which give rise to the cause of action against them.' Common liability has been conceived as a liability which is en-

forceable against each tort-feasor individually. However, instances are not uncommon when one of the tort-feasors has at the time of the tort a personal defense against the injured person which negates the possibility of personal legal liability and thus makes common liability a logical impossibility. In that situation, the person compelled to discharge the liability cannot recover contribution from the other whose participation in the tort gave the injured party no cause of action against him. *If the purpose of contribution is to make the wrongdoers share the financial burden of their wrong, then the primary element of contribution should be the participation of the wrongdoers in acts or omissions which are considered tortious and which result in injury to a third person. The fact that one of the tort-feasors has a personal defense if he were to be sued by the injured party would seem to be irrelevant.*" (Emphasis supplied.)

The foregoing quotation brings us immediately to the core of the subject. Best v. Yerkes, 247 Iowa 800, 77 N.W.2d 23, 60 A. L. R.2d 1354, permits action for contribution between joint tort-feasors where there is no intentional wrong, moral turpitude or concert of action. If the rule allowing contribution between wrongdoers is to be limited to situations where there is common liability, then the equitable reasons for the rule are only partially met. If the purpose of the rule is to allow contribution between wrongdoers because there is common culpability, with common proximate damage resulting, then the allowance of special defenses defeats the purpose of the rule in a substantial number of cases. Such special defenses can have validity as between the common alleged wrongdoers only where the rationale for the special defense applies to the additional situation or relationship.

II. It seems to be the position of plaintiff in this case that with the possible exception of Allied Mutual Casualty Co. v. Long, supra, none of the cases heretofore decided by this court has required us to clearly decide there should be a necessity for common liability (as distinguished from common negligence plus proximate cause). I agree.

Best v. Yerkes, supra, involved no situation which would allow a special defense, hence the term common liability was

sufficiently synonymous with common fault, or common culpability, to be so used without harm to the results of the case. Despite what we have said in Best v. Yerkes, supra, Hawkeye-Security Ins. Co. v. Lowe Constr. Co., 251 Iowa 27, 99 N.W.2d 421, Allied Mutual Casualty Co. v. Long, supra, and Fane v. Hootman, 254 Iowa 241, 117 N.W.2d 435, and despite the holding of a majority of the jurisdictions, common liability in its narrow and ultimate sense should not be a prerequisite to contribution between common tort-feasors. We should follow the superior reasoning of the Maine and Pennsylvania jurisdictions in this matter.

Where a defendant is culpably wrong and damages are proximately caused, but defendant is shielded from his normal legal duty to respond in compensatory damages for reasons of public policy, such shield should be limited to the relationships giving rise to the public policy.

As to Allied Mutual Casualty Co. v. Long, supra, as plaintiff points out there was no allegation in that case that plaintiff's insured was in fact negligent. However, if this is insufficient as a distinguishing factor, then that case, insofar as it requires common *liability*, should be overruled.

III. The majority notes Bedell v. Reagan, 159 Maine 292, 297, 192 A.2d 24, 27. There a defendant sought to make a plaintiff-husband a third-party defendant as to the wife's claim on the ground that he was a negligent participating or joint tort-feasor, the husband urged that his interspousal immunity destroyed the common liability requirement. He could not, therefore, be made a third-party defendant. The Maine court said:

"In an annotation at 19 A. L. R.2d 1003, with supporting authority, is to be found the following reportorial commentary:

" '* * * the courts in most of the few cases passing upon the question have denied to a tortfeasor the right to contribution from one whose concurrent negligence produced the injury of the plaintiff in the tort action, where, because of a marital, filial, or other family relationship between such injured person and the tortfeasor against whom contribution is sought, the former had no enforceable right of action against the latter, since the element of common liability of both tortfeasors to the injured

person, essential to the right of contribution, is lacking in such cases.'

" 'The element of common liability of both tortfeasors to the injured person' has been suffered to become a fetish in the ratio decidendi stated just above. The element should not be a controlling condition or factor when one joint tortfeasor unintentionally and negligently has wrought harm which he is dispensed from righting because of his matrimonial union with the victim but which the other joint tortfeasor not in the marital relation must redress in full to the injured spouse without any equitable right of contribution from the joint tortfeasor spouse. Law is only sensibly formalistic. It is a practical science. It is of the very proper object of equity to prevent the application of a universal legal principle in an eventuality where unconscionable and unjustifiable hardship must otherwise ensue."

IV. But the majority distinguishes that case from our instant problem because here we deal with a statutory workmen's compensation defense. Let us examine the statute.

"85.20 Rights of employee exclusive. The rights and remedies provided in this chapter for an employee on account of injury shall be exclusive of all other rights and remedies of such employee, his personal or legal representatives, dependents, or next of kin, at common law or otherwise, on account of such injury; * * *."

It will be noted that our statute limits the defense to definite named classes; i.e., "such employee, his personal or legal representatives * * * or next of kin." Why should we now judicially add common or joint tort-feasors to that list?

Let us note the New York statute as quoted in 2 Larson, Workmen's Compensation, section 76.30, at page 234:

" 'The liability of an employer prescribed by the last preceding section shall be exclusive and in place of any other liability whatsoever, to such employee, his personal representatives, husband, parents, dependents or next of kin, or anyone otherwise entitled to recover damages, at common law or otherwise on account of such injury or death * * *.' " (Emphasis added.)

Our statute does not contain the phrase "or anyone other-

wise entitled to recover damages." Where such a broad inclusionary phrase is present the courts might well be constrained to add third-party joint tort-feasors to the classes within the protected orbit. If we follow suit, we read new material into our statute.

American District Telegraph Co. v. Kittleson (8 Cir.), 179 F.2d 946, 952, 953, notes: " "* * * a statute will not be construed as taking away a common law right existing at the date of its enactment, unless that result is imperatively required;' * * *

"*We can discover nothing in the language of the Iowa Compensation Act indicating a purpose to abolish common law actions in tort except as between employer and employee.* On the contrary, the language of the Act relied on by appellees points the other way." (Emphasis added.)

The majority now impliedly rejects the reasoning in Kittleson even though such reasoning was specifically approved in Blackford v. Sioux City Dressed Pork, Inc., 254 Iowa 845, 118 N.W.2d 559. Basically Kittleson's result is correct. The difficulty imposed by this court's dicta requiring joint liability is avoided since the federal court would not attempt to change this court's pronouncements on this matter. Kittleson should not be rejected in this summary fashion. Indeed, the legal fiction employed in Kittleson would be unnecessary in the indemnity situation (page 324 of majority opinion) if the need for common liability is eliminated.

Again, in Blunt v. Brown, 225 F. Supp. 326 (S. D. Iowa), the federal court recognized our language requiring joint liability as a prerequisite to the right to contribution. That was another two-car collision situation where an effort was made to join the father-driver as third-party defendant for contribution or indemnity. The effort was defeated because of this court's language requiring common liability (as distinguished from common culpability). The federal district court followed that language, and reached a result contra to Bedell v. Reagan, supra. It would appear that the Maine court reached the proper result because the historic and logical basis for such defense, whether based on the guest statute or interspousal immunity, is not present in the contribution-indemnity situation. It should not,

therefore, be extended. Like reasoning applies where the Iowa Workmen's Compensation statute, section 85.20, is involved.

V. The citation from Larson, Workmen's Compensation Law, 243, section 76.53, must be noted. The citation is to the effect that it is inconsiderate to force courts to speculate about legislative intentions and "The legislature should face squarely the question whether the third party who happens to be so unfortunate as to get tangled up with a compensable injury should, so to speak, individually subsidize the compensation system by bearing alone a burden which normally he could shift to the employer."

Whatever validity these remarks may have as to the statute cited by Mr. Larson, the citation does not apply here. The legislature did not create the situation by inappropriate language. We create the situation by inappropriate addition to the statute. It is this court that "should face squarely the question whether the third party who happens to be so unfortunate as to get tangled up with a compensable injury should, so to speak, individually subsidize the compensation system by bearing alone a burden which normally he could shift to the employer."

VI. Since the majority's opinion at page 320 attempts to balance the arguments for and against the "common liability" rule as applied to situations where workmen's compensation defenses are a factor, I must, at the risk of unduly extending this dissent, note the arguments there made.

The incongruities which arise from the majority's discussion seem to be based upon a misinterpretation of both the purpose and the impact of the Workmen's Compensation Act. An employer cannot "complain with considerable cogency (that) the net result of a rule permitting contribution is to put money in the employee's pocket which has left the employer's pocket in spite of a plain statement that the employer's liability for a compensable injury shall be limited to compensation payments." The cogency is lost both in the plain statement of the act (as heretofore observed) and in the factual situation as it normally develops and as it developed here. The fact is that the money is already in the employee's pocket. The liability of the third-party common tort-feasor is liability for the whole loss and the em-

ployee will receive the full amount of the compensation (either judicially awarded or by compromise settlement) regardless of whether the employer is forced to contribute or not. This is not a matter between the employer and the employee. It is a matter between the employer and a third person.

Further, the anomalous situations envisioned by the majority at page 320 can occur only in specialized cases and equally anomalous situations can occur in other specialized situations to the benefit of the employer.

At Division I, at page 320, the majority asserts that the employer would be better off if the accident resulted solely from his negligence than it would be if it merely concurred with the negligence of another. This is an inaccurate generalization that is true only if the tort recovery is in the neighborhood of double the amount to be paid under the workmen's compensation schedule. Take a concrete example, Cronk v. Iowa Power and Light Co., 258 Iowa 603, 138 N.W.2d 843. The issues in that death case did not involve workmen's compensation, but it clearly was a third-party liability case. Trial was to the court resulting in a verdict for plaintiff in the amount of $18,000 (the workmen's compensation schedule payment allows $14,250 plus $500 burial expense). If the employer in that case had been concurrently negligent and recovery was obtained from the third party, there could be one of several results. No liability for concurrent negligence for contribution; thus employer gets all of his money back (minus attorney fees). The accident costs him nothing except legal expense. Or the principle of contribution could apply. In that event the employer must share the tort liability loss with the third party. Thus the injury probably costs little more than one half of what it would normally cost. Or the indemnity might apply. Then the full loss, in that case about $3250 above the compensation schedule, would fall on the indemnitor. (Medical expenses, which are often substantial, are omitted for the purpose of these illustrations.) The Cronk case is a good example only because the judgment was less than twice the compensation schedule. The comparative recovery figures could go either way. The statement of the majority erroneously assumes that in *all* cases the tort liability will exceed the compensation schedule by

an amount sufficiently high to make contribution detrimental vis-a-vis sole compensation liability to the employer. This may usually be true. It is not invariably true.

But even if the majority's assumption is correct, what difference should that make? The law is not promulgated for the sole protection of a given class. If an exemption for the sole protection of a given class is constitutionally justifiable, it should be limited to the situations that give it validity. Otherwise the constitutional question is different from, and much more serious than that dealt with in Hilsinger v. Zimmerman Steel Co., 193 Iowa 708, 187 N.W. 493, where the constitutionality of our Workmen's Compensation Law was upheld.

The rights of the independent contractor are equal to the rights of the employer. As to the employer and employee there can be said to be a quid pro quo for immunity from tort liability. But this cannot be said of potential liability between employer and independent contractor in a contribution or indemnity situation growing out of alleged concurrent negligence.

VII. Since we recognize the primary and active negligence principle for indemnity, Rozmajzl v. Northland Greyhound Lines, 242 Iowa 1135, 49 N.W.2d 501, there is sufficient evidence to submit plaintiff's Count I. Abild was handling the construction as it approached the dangerous electric line. The jury might well conclude that the continuance of work as such building approached the line, failure to notify Ipalco of the situation, and other charged specifications of negligence, constituted active and primary negligence.

Count II should also have been submitted for reasons set forth herein.

Divisions VI to XII allow Ipalco to seek indemnity on a theory of tort by breach of contract. This seems to be a tenuous theory under the fact situation here. It appears to be used and approved because of the inequity arising from insistence on presence of joint liability. A different view by the majority in its Divisions I through V might eliminate the need for submission on this tort by breach of contract theory. Except for the finding in Division XII that Ipalco's negligence was active or primary as a matter of law, I concur. Thus I believe that under

the circumstances Count III should be resubmitted consistent with the majority opinion's Divisions VIII, IX and X.

THORNTON and RAWLINGS, JJ., join in this dissent.